Gaston, Judge.
 

 It is not easy to state with precision, the power which the law grants • to schoolmasters and teachers, with respect to the correction of their pupils. It is analogous to that which belong» to parents, and the authority of the teacher is regarded as a delegation of parental authority. One of the most sabred duties of parents, is to train up and qualify their children, for becoming useful and virtuous members of sociíety ; this duty cannot be effectually performed without thje ability to command
 
 *366
 
 obedience, to control stubbornness, to quicken diligence, and to reform bad habits; and to enable him to exercise sa'utary sway, he is a™ed with the power to administer moderate correction, when he shall believe it to be just and necessary. The teacher is the substitute of the parent; is charged in part with the performance of his duties, and in the exercise of these delegated duties, is invested with his power.
 

 The law has not undertaken to prescribe stated punishments for particular offences, but has contented itself with the general grant of the power of moderate correction, and has confided the graduation of punishments, wdthin the limits of this grant, to the discretion of the teacher. The line which separates moderate correction from immoderate punishment, can only be ascertained by reference to general principles. The welfare of the child is the main purpose for which pain is permitted to be inflicted. Any punishment, therefore, which may seriously endanger life, limbs or health, or shall disfigure' the child, or cause any other permanent injury, may be pronounced in itself immoderate, as not only being unnecessary for, but inconsistent with, the purpose for which correction is authorized. But any correction, however severe, which produces temporary pain only, and no permanent ill, cannot be so pronounced, since it may have been necessary for the reformation of the child, and does not injuriously affect its future welfare. We hold, therefore, that it may be laid down as a general ru ie, that teachers exceed the limits of their authority when they cause lasting mischief; but act within the limits of it, when they inflict temporary pain.
 

 When the correction administered, is not in itself immoderate, and therefore beyond the authority of the teacher, its legality or illegalit y must depend entirely, we think, on the
 
 quit animo
 
 with which it was administered. Within the sphere of his authority, the master is the judge W’hen correction is required, and of the degree of correction necessary; and like nil others intrusted with a discretion, he cannot be made penally responsible for error of judgment, but only for wickedness of purpose. The best and
 
 *367
 
 the wisest of mortals are weak and erring creatures, and in the exercise of functions in which their judgment is to be the guide, cannot be rightfully required to engage for more than honesty of purpose, and diligence of exertion. His judgment must
 
 be presumed
 
 correct, because he is
 
 the judge,
 
 and also because of the difficulty of proving the offence, or accumulation of offences, that called for correction ; of showing the peculiar temperament, disposition, and habits, of the individual corrected; and of exhibiting the various milder means, that may have been ineffectually used, before correction was resorted to.
 

 But the master may be punishable when he does not transcend the powers granted, if he grossly, abuse them. If he use his authority as a cover for malice, and under pretence of administering correction, gratify his own bad passions, the mask of the judge shall be taken off, and he will stand amenable to justice, as an individual not invested, with judicial power.
 

 We believe that these are the rules applicable to the decision of the case before us. If they be, there was error in the instruction given to the jury, that if the child was whipped by the defendant so as to occasion the marks described by the prosecutor,' the defendant had exceeded her authority, and was guilty as charged. The marks were all temporary, and in a short time all disappeared. No permanent injury was done to the child. The only appearances that could warrant the belief or suspicion that the correction
 
 threatened
 
 permanent ‘ injury, were the bruises on the neck and the arms; and these, to say the least, were too equivocal to justify the Court in assuming, that they did threaten such mischief. We think that the instruction on this point should have been, that unless the jury could clearly infer from the evidence, that the correction inflicted had produced, or was in its nature calculated to produce, lasting injury to the child, it did not -exceed the limits of the power which had been granted to the defendant. We think also, that the jury should have been further instructed, that however ■ severe the pain inflicted, and however in their judgment it might seem disproportionate to the alleged negligence or offence of so
 
 *368
 
 young and tender a child, yet if it did not produce nor threaten lasting mischief, it was their"cluty to acquit the defendant; unless the. facts testified induced a conviction in their minds, that the defendant did not act honestly in the performance of duty, according to her sense of right, but under the pretext of duty, was gratifying malice.
 

 We think that rules less liberal towards teachers, cannot be laid down without breaking in upon the'authority necessary for preserving discipline, and commanding respect; and that although these rules leave it in their power to commit acts of indiscreet severity, with legal impunity, these indiscretions will probably find their check and correction, in parental affection, and in public opinion; and if they should not, tha't they must be tolerated as a part of those imperfections and inconveniences, which no human laws can wholly remove or redress.
 

 Per Curiam. Judgment reversed.