## STATE v. FRED JONES.

*Assault and Battery—Parent and Child.*

The law will not interfere in the domestic government of families by punishing a parent for the correction of his child, however severe or unmerited it may be (unless it produces permanent injury,) or is inflicted from malicious motives, and not from an honest purpose.

(*State* v. *Alford*, 68 N. C., 322; *State* v. *Rhodes*, Phil., 453; and *State* v. *Pendergrass*. 2 D. & B., 365; cited and approved).

The defendant was tried and convicted at July Term, 1886, of the Criminal Court of NEW HANOVER, before *Meares, Judge*, for an assault and battery, and from the judgment thereon pronounced against him, he appealed.

The defendant is charged, in the ordinary form of an indictment, with an assault and battery committed upon the person of Mary C. Jones, who, though not so designated, is his daughter, and was then sixteen years of age. Upon the trial, she testified that the defendant was a man of bad temper and frequently whipped her without any cause; that on one occasion he whipped her at the gate in front of his house, giving her about twenty-five blows with a switch, or small limb, about the size of one's thumb or forefinger, with such force as to raise whelks upon her back, and then going into the house, he soon returned and gave her five blows more with the same switch, choked her, and threw her violently to the ground, causing a dislocation of her thumb

joint; that she had given him no offence; that she did not know for what she was beaten, nor did he give her any reason for it during the time. No permanent injury was inflicted upon her person. There was other corroborative testimony, and one witness saw her tongue hanging out of her mouth while being choked. The defendant and his wife, step-mother of the girl, swore that she was habitually disobedient, had several times stolen money, and was chastised at the time spoken of for stealing some cents from her father; that he never whipped her except for correction, and this he was often compelled to do for that purpose, and had never administered punishment under the impulse of high temper or from malice.

The defendant's counsel requested an instruction that in order to a conviction, it was incumbent on the State to show that some permanent injury had been inflicted.

This was refused, and the jury was charged that "a parent had the right to inflict punishment on his child for the purpose of correction, but the punishment must not be 'excessive and cruel,' nor must it be 'to gratify malicious motives;' that if the whipping was such as described by the daughter, there would arise a question as to the severity and extent of the punishment; that if the jury were convinced that it was cruel and excessive, the defendant would be guilty; that it was not necessary that it should result in a permanent injury to her, and if it was *excessive and cruel* it would be sufficient to make the defendant guilty."

The *Attorney General,* for the State.
*Mr. John D. Bellamy* for defendant.

SMITH, C. J. (after stating the case). It will be observed that the test of the defendant's criminal liability is the infliction of a punishment "*cruel and excessive,*" and thus it is left to the jury without the aid of any rule of law for their guidance to determine.

### STATE v. JONES.

It is quite obvious that this would subject every exercise of parental authority in the correction and discipline of children—in other words, domestic government—to the supervision and control of jurors, who might, in a given case, deem the punishment disproportionate to the offence, and unreasonable and excessive. It seems to us, that such a rule would tend, if not to subvert family government, greatly to impair its efficiency, and remove restraints upon the conduct of children. If, whenever parental authority is used in chastising them, it could be a subject of judicial inquiry whether the punishment was cruel and excessive—that is, beyond the demerits of the disobedience or misconduct, and the father himself exposed to a criminal prosecution at the instance of the child, in defending himself from which he would be compelled to lift the curtain from the scenes of home life, and exhibit a long series of acts of insubordination, disobedience and ill-doing—it would open the door to a flood of irreparable evils far transcending that to be remedied by a public prosecution. Is it consistent with the best interest of society, that an appeal should thus lie to the Court from an act of parental discipline, severe though it may be, and unmerited by the particular offence itself, perhaps, but one of a series evincing subbornness and incorrigibility in the child, and the father punished because the jurors think it cruel and immoderate?

While the ruling of the Court is not without support in some of the adjudication, to which reference is made in 2 Whar. Cr. Law, §1259, we prefer to abide by the rule by which the limits to the exercise of the right of family government are to be ascertained, laid down after a lucid exposition of the subject by that humane and just man, so long a member of this Court, Judge GASTON, in *State v. Pendergrass*, 2 D. & B., 365. This was a case where a school-mistress, whose use of the rod upon a pupil left marks upon her person, which, after a few days, disappeared. We quote

STATE v. JONES.

extracts from the opinion: "Within the sphere of his authority, the master is the judge when correction is required, and of the degree of correction necessary; and, like all others intrusted with discretion, he cannot be made penally responsible for errors of judgment, but only for wickedness of purpose. * * His judgment must be *presumed* correct, because he is the *judge*, and also because of the difficulty of proving the offence, or accumulation of offences, that called for correction; of showing the peculiar temperament, disposition and habits of the individual corrected, and of exhibiting the various milder means that may have been ineffectually used before correction was resorted to. * * If he use his authority as a cover for malice, and under pretence of administering correction, gratifies his own bad passions, the mask of the judge shall be taken off, and he will stand amenable to justice as an individual not invested with judicial power." "We think also," he summarily concludes the discussion, "that the jury should have been further instructed, that however severe the pain inflicted, and however, *in their judgment, it might seem disproportionate to the alleged negligence or offence* of so young and tender a child" (she was six or seven years old), "yet, if it did not produce nor threaten lasting mischief, it was their duty to acquit the defendant, unless the facts testified induced a conviction in their minds that the defendant did not act *honestly* in the performance of duty, according to her sense of right, but, under pretext, was gratifying malice."

While acts of indiscreet severity are not criminally punishable, unless under the conditions set out, their check for the good and welfare of society must be found in the promptings of parental affection and a wholesome public opinion, and if these are insufficient, they must be tolerated as an incident to the relation, which human laws cannot wholly remove or redress.

Such are the concluding sentiments, and almost in the words of the Judge.

So remarks READE, J., in *State* v. *Rhodes*, Phil., 453: "The Courts have been loath to take cognizance of trivial complaints arising out of the domestic relations, such as master and apprentice, teacher and pupil, parent and child, husband and wife. Not because these relations are not subject to law, but because the evils of publicity would be greater than the evil involved in the trifles complained of; and because they ought to be left to family government." He adds: "Our conclusion is, that family government is recognized by law as being as complete in itself as the State government is in itself, and yet subordinate to it; and that we will not interfere with or attempt to control it in favor of either husband or wife," (the case then before the Court), "unless in cases where *permanent or malicious injury is inflicted or threatened, or the condition of the party is intolerable.*"

The principle was extended to one living with the mother of the child, though not married, in *State* v. *Alford*, 68 N. C., 322, and BOYDEN, J., quotes with approval what was said by GASTON, J., in the *State* v. *Pendergrass*, *supra*, declaring that "punishment, therefore, which may seriously endanger life, limb or health, or shall disfigure the child, or cause any other permanent injury, may be pronounced in itself immoderate, as not only being unnecessary for, but inconsistent with the purpose for which correction is authorized. But any correction, however severe, which produces temporary pain only, and no permanent injury, cannot be so pronounced, since it may have been necessary for the reformation of the child, and does not injuriously effect its future welfare."

The test, then, of criminal responsibility is the infliction of permanent injury by means of the administered punishment, or that it proceeded from malice, and was not in the exercise of a corrective authority. It would be a dangerous innovation, fruitful in mischief, if, in disregard of an established rule assigning limits to parental power, it were to be left to

left to a jury to determine in each case whether a chastisement was excessive and cruel, and to convict when such was their opinion.

We do not propose to palliate or excuse the conduct of the defendant in the present case. The punishment seems to have been needlessly severe, but we refuse to take cognizance of it as a criminal act, because it belongs to the domestic rather than legal power, to a domain into which the penal law is reluctant to enter, unless induced by an imperious necessity.

There is error. Let this be certified to the end that the verdict be set aside and a *venire de novo* ordered.

Error. Reversed.