STATE v. THORNTON.

(Filed October 4, 1904).

1. ASSAULT—*Schools—Teachers—Evidence.*

In the prosecution of a school-teacher for whipping a pupil, evidence as to the government of the school before defendant was installed, and the request of a committee that he should preserve order, is not competent.

2. CHARACTER—*In Evidence—Assault—Evidence.*

In the prosecution of a school-teacher for whipping a pupil, proof of defendant's good character must be confined to his general character.

3. EVIDENCE—*Assault—Schools.*

In the prosecution of a school-teacher for whipping a pupil, evidence of the good effect of the chastisement is not admissible.

4. ASSAULT—*Schools—Malice.*

Where the correction administered by a school-teacher is not in itself immoderate, and therefore beyond the authority of the teacher, its legality or illegality must depend entirely on the *quo animo* with which it is administered.

5. SCHOOLS—*Assault.*

Within the sphere of his authority, the school-teacher is the judge as to when correction of a pupil is required, and of the degree of correction necessary.

6. SCHOOLS—*Assault—Presumption.*

Where a school-teacher exercises his judgment in whipping a pupil, the presumption is that he exercised it correctly.

7. ASSAULT—*Schools.*

Where a school-teacher, in administering correction to pupils who disobey the rules of the school, uses his authority as a cover for malice, he is indictable.

8. MALICE—*Presumptions—Assault.*

In the prosecution of a school-teacher for whipping a pupil, the jury may infer malice from an excessive punishment.

9. SCHOOLS—*Assault—Malice.*

A school-teacher who, prompted by revenge, administers corporal correction, is as guilty criminally as if he had acted with malice.

10. INDICTMENTS—*Assault—Schools—Justices of the Peace—Warrant—Const. N. C., Art. I, sec. 13; Art. IV, sec. 27.*

A defendant in a prosecution for a simple assault may be tried in the superior court on the warrant of the justice of the peace without an indictment by a grand jury.

11. WARRANT—*Assault—Schools—Damage.*

A warrant charging a school-teacher with inflicting on a pupil immoderate punishment, but not setting out any facts showing serious damage, is for simple assault only.

INDICTMENT against F. A. Thornton, heard by *Judge G. S. Ferguson* and a jury, at May Term, 1904, of the Superior Court of SAMPSON County.

A criminal action for an assault, heard in Superior Court on appeal from a justice of the peace.

The defendant was a school-teacher and the prosecutor one of his pupils about ten years old. The boys of the school had been guilty of misconduct and the defendant warned them and threatened to punish any repetition of it. There was evidence tending to show that the prosecutor had repeated the act complained of, and other evidence that it was accidentally and not intentionally done. There was also evidence tending to show that the defendant whipped the prosecutor immoderately and in anger, and other evidence tending to show the contrary. It is not necessary to set out the evidence in full.

The defendant asked the Court to charge the jury that there was no evidence of malice in this case. This was refused, and the defendant excepted. At the request of the defendant the Court charged the jury: 1. That the law permits a teacher to inflict corporal punishment upon the pupil to enforce discipline and obedience to the rules of the school, and when it is administered under such circumstances the burden is on the State to show beyond a reasonable doubt that the teacher was actuated by malice towards the pupil, or that the injury inflicted is permanent, and that unless they found that there was either malice or a permanent injury they should acquit the defendant. 2. The difference between general and particular malice, as stated in *Brooks v. Jones,* 33 N. C., 260, was then explained to the jury. 3. That the defendant had the right to whip the prosecutor for any violation of the rules of the school, and even though the jury should find that the whipping was more than was necessary and was attended by bodily pain and suffering, they should not convict unless they found that there was either malice or a permanent injury, the latter being an injury which is lasting and will continue indefinitely.

After giving these special instructions at the defendant's request, the Court charged generally in regard to the rights, duties and liabilities of a teacher with respect to his pupil, to which there was no exception. The Court told the jury that there was no permanent injury to the prosecutor, and then gave this instruction to the jury, to which the defendant excepted: "If the jury are satisfied beyond a reasonable doubt from the evidence that the punishment was excessive, they may take the excessive punishment into consideration with the other evidence in the case in determining whether the defendant was actuated by malice." The Court further charged substantially as follows: "That if they found from the testimony the defendant bore malice against the prose-

cutor and whipped the latter excessively to gratify his malice, ill-will, or grudge, or for the purpose of being revenged on him [whether the defendant was actuated by previous malice towards the prosecutor individually, which still existed, or his purpose and intent were to be revenged on him for the misconduct of the other boys in popping the matches, his motive being malice or vengeance as thus explained and not merely the enforcement of the rules of the school], they should convict the defendant. The defendant objected to so much of the charge as is in brackets. The Court stated fully the contentions of both sides, to which there was no exception. Verdict of guilty, judgment and appeal by defendant.

*Robert D. Gilmer, Attorney-General,* for the State.
*George E. Butler* and *T. M. Argo,* for the defendant.

WALKER, J., after stating the facts. We are unable to see how any of the evidence which was excluded by the Court upon objection by the State had any bearing on the case. The government of the school before the defendant was installed as its master and the request of the committee that he should preserve order and enforce discipline had no tendency to prove the absence of malice at the time he whipped his pupil. He had a perfect right to punish his pupil for the purpose of correction, but even if the school had not been well managed, and he had been specially requested to be more strict in compelling obedience to the rules, he had no more authority by reason thereof than he would otherwise have possessed, and his criminal liability for an excessive and malicious use of his power would be just the same. Similar evidence was held to have been properly excluded in *State v. Dickerson,* 98 N. C., 708. The defendant had the right to prove his good character and to

have it considered by the jury, but it should always be confined to general character.   This has now become familiar learning.   The good effect the chastisement of the prosecutor had upon the discipline of the school was manifestly irrelevant.   Suppose the defendant had grievously wounded the prosecutor, or disfigured or maimed him, would such evidence be competent, and if not in such a case why should it be if the punishment was excessive and inflicted maliciously?   The law does not tolerate evil that good may come. A teacher by his very excesses may inspire terror in his pupils and thus subdue them to his will and authority, but the law will not excuse his cruel acts for the sake of good discipline in his school.

The rule by which the criminal liability of a teacher for punishment inflicted on his pupil is determined was clearly and forcibly stated by *Gaston, J.,* in *State v. Pendergrass,* 19 N. C., 365, 31 Am. Dec., 416.   It has been accepted as a leading authority upon this subject, not only by this Court but by the courts of many of the other States and by text writers.   We quote substantially from that case such parts as are specially applicable to the facts in our case.   When the correction administered is not in itself immoderate, and therefore beyond the authority of the teacher, its legality or illegality must depend entirely on the *quo animo* with which it was administered.   Within the sphere of his authority the master is the judge when correction is required, and of the degree of correction necessary; and like all others entrusted with a discretion, he cannot be made penally responsible for error of judgment, but only for wickedness of purpose.   His judgment must be presumed to be correct, because he is the judge, and also because of his special knowledge of other facts and circumstances which may have influenced his conduct and which may be difficult to be proved.   But the master may yet be punishable when he does not transcend

the powers granted if he grossly abuse them. If he use his authority as a cover for malice, and, under pretense of administering correction, gratify his own bad passions, the mask of the judge shall be taken off and he will stand amenable to justice as an individual not invested with judicial power. The jury should be instructed that unless they are fully satisfied that the correction had produced or was calculated to cause lasting injury to the pupil, they should acquit, however severe the pain inflicted and however disproportionate to the alleged offense, unless the jury find that the defendant did not act honestly in the performance of duty, according to his sense of right, but, under the pretext of duty, was gratifying malice. This principle was declared with reference to the following state of facts: "The defendant kept a school for small children. Upon one occasion, after mild treatment towards a little girl of six or seven years of age had failed, the defendant whipped her with a switch so as to cause marks upon her body, which disappeared in a few days. Two marks were also proved to have existed—one on the arm and another on the neck—which were apparently made with a larger instrument, but which also disappeared in a few days."

As the clear result of all the authorities, Bishop, in his work on Non-contract Law, sec. 956, thus states the law: "The teacher has the power to enforce obedience to the rules and to his commands. One of the means recognized by the law is corporal chastisement. He may thereby inflict temporary pain, but not 'seriously endanger life, limb or health, or disfigure the child, or cause any other permanent injury.' He cannot lawfully beat the child, even moderately, to gratify his own evil passions; the chastisement must be honestly inflicted in punishment for some dereliction which the pupil understands. Plainly, if the teacher keeps himself within these limits and his lawful jurisdiction, he must de-

cide the question of the expediency or necessity of the punishment and its degree; it is impossible he should ever inflict it without"; citing, among other cases, *State v. Pendergrass.* Many authorities could be cited in support of this view of the law, but a few will suffice. *State v. Black,* 60 N. C., 263, 86 Am. Dec., 436; *State v. Rhodes,* 61 N. C., 453, 98 Am. Dec., 78; *State v. Alford,* 68 N. C., 322; *State v. Jones,* 95 N. C., 588, 59 Am. Rep., 282; *State v. Long,* 117 N. C., 791; *Drum v. Miller,* 135 N. C., 204.

When tested by the principle thus established, we find that the charge of the Court contained a correct statement of the law applicable to the facts of the case and was fully as favorable to the defendant as he had any reason to expect, and the Courts was equally correct in refusing the defendant's prayers for instructions. The punishment administered by defendant was certainly as severe as that inflicted by Pendergrass, which was held sufficient to carry the case to the jury upon the question of malice. The jury may infer malice from the excessive punishment. *State v. Black,* 60 N. C., 263. It also follows from what we have said that the defendant was as guilty if he was prompted by revenge, or if he intended to punish the prosecutor for the misconduct of others, as he would be if he had acted with malice. In either case his motive would be bad and the punishment unlawful. *Stevens v. Railroad,* 10 Exch., 356.

The defendant moved to arrest the judgment because the Court had no jurisdiction to try the defendant without an indictment. This question has long since been settled against him, upon a construction not only of the statute, but of the Constitution. *State v. Quick,* 72 N. C., 241; *State v. Crook,* 91 N. C., 536; Const., Art. I, sec. 13, and Art. IV, sec. 27. The other ground urged in this case for the arrest of the judgment is equally untenable. The warrant alleges only that the defendant inflicted "immoderate punishment and

serious injury," but does not set out any facts from which the Court can decide as matter of law that there was serious damage. It was a warrant for a simple assault only. *State v. Stafford,* 113 N. C., 635; *State v. Battle,* 130 N. C., 655. We do not think the case comes within the principle of *State v. Huntley,* 91 N. C., 617, especially in view of the particular findings of the jury, upon which the verdict must have been based, when it is considered in connection with the charge. The case in this respect is more like that of *State v. Stafford, supra.*

We find no error in the case and no defect in the record.

No Error.