## PEOPLE v. GREEN.

1. CRIMINAL LAW—ASSAULT AND BATTERY—EVIDENCE OF SUBSE-
QUENT EVENTS—NONPREJUDICIAL EFFECTS—ADMISSIONS.

On a prosecution for assault and battery, a witness for defend-
ant was asked, on cross-examination, if, after the happening
of the event complained of, the respondent's fellow employés
had not circulated a petition threatening to quit if respond-
ent was not discharged. The court did not permit the ques-
tion to be answered, but in a colloquy between court and
counsel it became apparent to the jury that such petition
had been circulated, and that respondent had been dis-
charged or forced to resign. *Held*, to have been manifest .
error as having no bearing on his reputation at the time of
the commission of the offense complained of, but, in view of
respondent's admissions of the facts constituting the offense,
was not prejudicial to his rights.

2. SAME—FORMER CONVICTION OF OFFENSE—INSTRUCTIONS.

The mention, in the opening statement of the trial judge, in
the charge to the jury, of the fact that respondent had been
convicted in the police court of the offense charged, and that
he had appealed, was not reversible error, in view of the
facts (a) that on the trial mention of such former trial was
made by respondent's counsel; (b) it is apparent that only
by conviction in said court can a criminal case be appealed;
and (c) the court clearly warned the jury that they had no
right to consider anything which had occurred in another
court as bearing upon respondent's guilt or innocence.

3. SAME — PARENT AND CHILD — PARENTAL AUTHORITY — EXTENT
OF PUNISHMENT.

In such action, it is not necessary, to sustain a conviction, to
show that the punishment inflicted by a person on a child to
whom he stood in loco parentis was such as to cause perma-
nent injury or disfigurement. It is sufficient to show that
the punishment was cruel and unreasonably severe, and
such as in its very nature would negative the idea of good
faith on the part of the parent. And, where the uncontra-
dicted evidence, supplemented by the admissions of respond-
ent, disclosed that when the complaining witness, a girl
about 13 years of age, denied the taking of a sum of money,
respondent, after compelling her to disrobe, whipped her

til the blood had oozed out, and scabbed over, and when I bathed the little thing with witch-hazel and water she cried, and I could not bathe them any more."

With reference to the alleged assault, the respondent testified as follows:

"There is no doubt I gave this child a whipping on Friday, the 16th day of August. I used the whip in court here. I could not say as to the number of times. I do not know the number of times I hit her, but it was no 70. My purpose in whipping her was not to wring a confession from her. * * * I tied her hands to prevent her leaving the room and ending the punishment of her own volition. * * * I whipped her when she was naked. She was standing before me nude when I applied that whip to her body. * * * What I was trying to get her to say from Friday afternoon to Sunday morning was that she was going to try to do better and to refrain from habits of dishonesty. I could not limit the number of times I struck her. It was not a great number. * * * As I have had a chance to look over the past two years and a half, I am satisfied that some other method might have been used with the child to better advantage. It is hard for a man to decide those questions on the spot."

There are many assignments of error on the part of the respondent, only a few of which we think require discussion. The witness George W. Mutter, sworn on behalf of defendant, gave testimony tending to show that the respondent's reputation up to the time of the alleged assault was good. On cross-examination the prosecuting attorney asked the witness if there was a petition signed by practically all the employés of Parke, Davis & Co., saying that they would quit if respondent was not discharged. The court did not permit the question to be answered, but in a colloquy between the court and counsel it doubtless became apparent to the jury that such a petition had been circulated, and that the respondent had been discharged or forced to resign. We are of the opinion that this is manifest error. It is quite clear from the record that the discharge of the defendant, if he was discharged by Parke, Davis & Co., and the circulation

and signing of the petition referred to, were all facts subsequent to the date of the alleged assault, and could have no legitimate bearing on the question of his reputation up to the time of the assault. The only question that remains therefore with reference to this particular matter is whether or not the defendant was prejudiced by the error. We think that the respondent by his own testimony as to the assault in question practically admitted his guilt of the offense as charged, provided, only, that it should be determined by this court that the punishment inflicted went beyond the legitimate exercise of parental authority. We therefore conclude that, improper as this cross-examination was, it was not prejudicial to the respondent's rights.

Error is assigned upon the opening statement of the trial judge in his charge, which is as follows:

"The defendant in this case, gentlemen of the jury, was convicted and appealed from a case before one of the police justices into this court, for inflicting what is termed in law unlawful punishment."

It is the contention of the respondent that the mention by the trial judge of the fact that the respondent had been tried and convicted in the police court is reversible error. We are unable to agree with this contention. During the examination of more than one of the witnesses reference was made to the trial in the police court; at least one of such references being made in response to questions by respondent's attorney. A case tried in the police court can only reach the recorder's court where a conviction is had in the police court. It is therefore apparent that there having been a trial in the police court, and the case being on trial in the recorder's court, a conviction must have resulted in the police court. Further, the judge in his charge clearly warned the jury that they had no right to consider anything which had occurred in another court as bearing upon respondent's guilt or innocence, as is shown from the following portion of his charge:

"It can make no difference with you, it should make no difference with you, and under the law it must make no difference with you, what the police magistrate determined in this case."

We will next consider the assignment of error based upon the court's refusal to charge as requested by respondent's counsel with reference to the law applicable to the case. This brings us to a consideration of the question as to how far a parent or other person in loco parentis may inflict corporal punishment upon a child legally in his control, without becoming liable for an assault and battery. It was the respondent's claim that in order to render him criminally liable the punishment must be such as to cause permanent injury, and that correction, however severe, which produces temporary pain only and no permanent injury, involves no such liability. The people urge that a proper construction of the law is that, whether or not the particular punishment under consideration is or is not reasonable is a question of fact for the jury, to be determined by all the circumstances surrounding the case, and that a punishment may be held to be unreasonable which does not involve permanent injury, disfigurement, or disability.

The respondent relies, among others, upon the case of *Boyd* v. *State*, 88 Ala. 169. In this case the defendant, a schoolmaster, had been convicted of assault and battery upon a pupil of the school. Somerville, J., speaking for the court, says, at page 171:

"All of the authorities agree that he will not be permitted to deal brutally with his victim so as to endanger life, limb, or health. He will not be permitted to inflict 'cruel and merciless punishment.' Schouler's Domestic Relations (4th Ed.), § 244. He cannot lawfully disfigure him, or perpetrate on his person any other permanent injury. As said by Gaston, J., in *State* v. *Pendergrass*, 19 N. C. 365, a case generally approved by the weight of American authority:

" ' It may be laid down as a general rule that teachers exceed the

limit of their authority, when they cause lasting mischief; but act within the limits of it when they inflict temporary pain.'"

He further quotes Mr. Bishop, as follows:

"'The law has provided no means whereby a parent, meditating chastisement, can first obtain a judicial opinion as to its necessity, the proper instruments, and its due extent. In reason, therefore, if he acts in good faith, prompted by pure parental love, without passion, and inflicts no permanent injury upon the child, he should not be punished merely because a jury reviewing the case do not deem it was wise to proceed so far.'" 1 Bishop on Criminal Law (7th Ed.), § 882.

In the case there under consideration the conviction was sustained, although a careful examination of the case fails to reveal that the pupil had received at the hands of the teacher any *permanent* injury.

Another case relied on by respondent is that of *State* v. *Alford*, 68 N. C. 322. This was a case where a man living with a woman as man and wife committed an alleged assault upon the woman's son, to whom he stood in loco parentis. For some misconduct the defendant whipped the boy, who made considerable outcry, and four days afterwards there was a mark on his back the width of a broom straw, two inches long, where the skin had been broken, and there was some discoloration. The defendant was convicted, and on appeal discharged upon the authority of *State* v. *Pendergrass*, supra.

In *State* v. *Pendergrass*, 19 N. C. 365, Gaston, J., speaking for the court, lays down the following principles:

"The law has not undertaken to prescribe stated punishment for particular offenses, but has contented itself with the general grant of the power of moderate correction, and has confided the graduation of punishments, within the limits of this grant, to the discretion of the teacher. The line which separates moderate correction from immoderate punishment can only be ascertained by reference to general principles. The welfare of the child is the main purpose for which pain is permitted to be inflicted. Any punishment therefore which may seriously endanger life, limbs, or health, or shall disfigure the child,

or cause any other permanent injury, may be pronounced in itself immoderate, as not only being unnecessary for, but inconsistent with, the purpose for which correction is authorized; but any correction, however severe, which produces temporary pain only, and no permanent ill, cannot be so pronounced, since it may have been necessary for the reformation of the child, and does not injuriously affect its future welfare. We hold therefore that it may be laid down as a general rule that teachers exceed the limits of their authority when they cause lasting mischief; but act within the limits of it when they inflict temporary pain. * * * It was their duty to acquit the defendant, unless the facts testified induced a conviction in their minds that the defendant did not act honestly in the performance of duty, according to her sense of right, but under the pretext of duty was gratifying malice."

Schouler, in his work on Domestic Relations (4th Ed.), § 244, lays down the law as follows:

" The common law, far more discreet, gives the parent only a moderate degree of authority over his child's person, which authority relaxes as the child grows older. With the progress of refinement, parents have learned to enforce obedience by kindness rather than severity; and although the courts are reluctant to interfere in matters of family discipline, they will discountenance every species of cruelty which goes by the name of parental rule. The common law gives the right of moderate correction of the child in a reasonable manner, ' for,' it is said 'this is for the benefit of his education.' But at the same time the parent must not exceed the bounds of moderation, and inflict cruel and merciless punishment, for if he do he is liable to be punished by indictment"—citing 1 Hawk, P. C. 130; *Gorman* v. *State*, 42 Tex. 221; *State* v. *Alford*, supra; *State* v. *Burton*, 45 Wis. 150; *Danenhoffer* v. *State*, 69 Ind. 295; *State* v. *Jones*, 95 N. C. 588.

We think the law is correctly stated in *State* v. *Koonse*, 123 Mo. App. 655. The defendant in that case was convicted of the crime of assault and battery inflicted on the person of one Willie Brown, who was an orphan being raised by the defendant. The boy had run away from the defendant's home several times. The offense in question

arose out of his treatment of the boy when he had found him after one of his runaway trips. The defendant rode horseback and compelled the boy to run on ahead, the distance of about four or five miles, home. The boy was barefooted, and part of the way lay on stony ground. At different times the boy was urged forward by being whipped over the back with a horse whip. The defendant contended that the conduct of the boy called for parental correction and denied administering as severe a punishment as was claimed by the State's witnesses. We approve the following reasoning of Johnson, J., speaking for the court in that case:

"The parent is the sole judge of the necessity for the exercise of disciplinary right and of the nature of the correction to be given, and the mere fact that a castigation he gives his child may appear to others to be unnecessarily harsh or severe does not make of his conduct a subject of judicial cognizance. As long as he acts in good faith, honestly thinking that what he does is for the benefit of the child, he is within his prerogative, and the law will not interfere. Courts do not and should not constitute themselves the arbiters of the household. There the authority of the parents, within the limits we shall presently define, is supreme, and from their judgment there is no appeal; but those domestic tribunals have limits to their jurisdiction, beyond which they may not go with impunity. The welfare of the child is the principal ground on which the parental right to chastise him is founded, and where the punishment inflicted is so excessive and cruel as to show beyond a reasonable doubt that the parent was not acting in good faith for the benefit of the child, but to satisfy his own evil passion, he no longer is to be considered as a judge administering the law of the household, but as a malefactor guilty of an unlawful assault on a helpless person intrusted to his care and protection. Thus to maim the child or endanger his life or health, or to severely beat him with an improper and dangerous instrument, though no permanent injury be given, or to subject him to unusual forms of physical torture, or to whip him with such excessive severity as implies the absence of a due appreciation of parental duty, are acts which in themselves bespeak evil intent; and a parent

guilty of such excess will not be heard to say that he thought he was acting for the benefit of the child."

See, also, *Hinkle* v. *State*, 127 Ind. 490.

From a careful review of all the authorities, and for the purpose of defining the rule of action which should govern this jurisdiction, we are of the opinion that it is not necessary, to sustain a conviction, to show that the punishment inflicted by the parent was such as to cause permanent injury or disfigurement to the child. It is sufficient to show that the punishment was cruel and unreasonably severe, and such as in its very nature would negative the idea of good faith on the part of the parent. The uncontradicted evidence of the people's witnesses in the case, supplemented by the testimony of the respondent himself, disclosed such a state of facts as in the opinion of the court fully warranted and demanded the respondent's conviction. We think one of the most serious elements of the respondent's offense is the conceded fact that he compelled the complaining witness, a female between 12 and 13 years of age, to stand before him nude and receive the castigation. This act tended to shock her modesty, to break down her sense of decency and the inviolability of her person, which is the most valuable possession of a young girl. It is not the intention of the court to in any wise weaken parental authority. On the contrary, we hold that it is the unquestionable right of parents and those in loco parentis to administer such reasonable and timely punishment as may be necessary to correct growing faults in young children; but this right can never be used as a cloak for the exercise of malevolence or the exhibition of unbridled passion on the part of a parent.

We do not believe the errors discussed, or the errors assigned which have not been deemed worthy of discussion, are reversible or prejudicial.

The conviction is affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.