*835
 
 DILLON, Judge.
 

 *226
 
 Dean Michael Varner ("Defendant") was convicted of misdemeanor child abuse for inflicting physical injuries on his son with a paddle. Defendant appeals, contending that the trial court erred by failing to give a requested jury instruction concerning a parent's right to discipline his or her child. We reverse.
 

 I. Factual Background
 

 The evidence presented at trial tended to show as follows: Defendant and his ten-year old son were having pizza for dinner at the kitchen table with other family members. Defendant's son, who was a "picky eater," refused to eat the pizza, telling Defendant that pizza made him gag. Defendant left the table, briefly sat down in the living room, and then retrieved a paddle. Defendant returned to the kitchen table with the paddle, stood next to his son, who was still seated at the kitchen table, and
 
 *227
 
 counted down from three. After completing his countdown, Defendant struck his son's left thigh three times with the paddle. Defendant also struck his son's foot as his son pulled his leg up in an attempt to block the blows. Defendant's son then took a bite of the pizza.
 

 The next morning, Defendant's son had bruising on his thigh, from his knee to his waist. For several days thereafter, Defendant's son was in pain from the punishment, walking with a slight limp and unable to participate in gym class at school. After several days, the pain and bruising subsided.
 

 Months later, the State obtained an indictment, charging Defendant with felony child abuse.
 

 II. Procedural Background-Jury Instructions
 

 Prior to the case being sent to the jury, the parties and the trial judge held a charge conference to discuss the jury instructions. During the charge conference, the trial judge indicated to the parties that he was planning to include an instruction to advise the jury that it could not convict Defendant if it determined that his son's physical injuries were inflicted as a result of Defendant's "moderate punishment to correct [his] child." Neither party objected to this instruction.
 

 The trial judge, however, further indicated that he would give an instruction defining "moderate punishment" as "punishment that does not cause
 
 lasting
 
 injury." The State objected to this definition, contending that "moderate punishment" should not be limited to that which produced lasting injuries. The trial judge agreed with the State and, over Defendant's objection, struck this definition. In the end, the trial judge left "moderate punishment" undefined, leaving it to the jury to determine whether the punishment inflicted by Defendant on his son was moderate "according to the facts and circumstances of the particular case and in the exercise of [their] reason and common sense."
 

 The jury acquitted Defendant of felony child abuse but found him guilty of the lesser-included offense of
 
 misdemeanor
 
 child abuse. Defendant gave timely notice of appeal.
 

 III. Analysis
 

 Defendant's sole argument on appeal is that the trial court committed reversible error when it struck the proposed instruction defining "moderate punishment" as punishment which caused "lasting" injury to the child. Specifically, Defendant contends that the instruction impermissibly allowed the jury to convict him simply because they thought
 
 *228
 
 Defendant's
 
 degree
 
 of punishment was excessive, even if they thought Defendant was acting in good faith and did not inflict a lasting injury upon his child. We agree with Defendant. Even though sufficient evidence was presented to convict Defendant of misdemeanor child abuse, we are compelled to reverse and remand for a new trial.
 

 On appeal, this Court reviews jury instructions
 
 de novo
 
 ,
 
 State v. Osorio
 
 ,
 
 196 N.C.App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009), considering the matter anew and substituting its own judgment for that of the lower court.
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008).
 

 A parent commits misdemeanor child abuse when the parent intentionally inflicts
 
 any
 
 "physical injury" on their child who is under 16 years of age.
 
 N.C. Gen. Stat. § 14-318.2
 
 (2013).
 

 *836
 
 A parent, however, has the constitutionally protected "paramount right" to raise one's children as the parent sees fit.
 
 See
 

 Petersen v. Rogers
 
 ,
 
 337 N.C. 397
 
 , 402,
 
 445 S.E.2d 901
 
 , 904 (1994). Accordingly, our Supreme Court has recognized that, as a general rule, a parent (or one acting
 
 in loco parentis
 
 ) is
 
 not
 
 criminally liable for inflicting physical injury on a child in the course of lawfully administering corporal punishment.
 
 State v. Alford
 
 ,
 
 68 N.C. 322
 
 , 323 (1873).
 

 This general rule regarding a parent's right to administer corporal punishment does
 
 not
 
 apply: (1) where the parent administers punishment "which may seriously endanger life, limb or health, or shall disfigure the child, or cause any other
 
 permanent
 
 injury[,]"
 
 Alford
 
 ,
 
 68 N.C. at
 
 323 ; (2) where the parent does not administer the punishment "honestly" but rather "to gratify his own evil passions[,]" irrespective of the degree of the physical injury inflicted,
 
 State v. Thornton
 
 ,
 
 136 N.C. 610
 
 , 615,
 
 48 S.E. 602
 
 , 604 (1904) ; or (3) where the parent uses "cruel or grossly inappropriate procedures ... [or] devices to modify" a child's behavior, N.C. Gen. Stat. § 7B-101(1)(c) (2013).
 

 In 1837, our Supreme Court recognized the power of those with parental authority to administer "moderate" corporal punishment:
 

 One of the most sacred duties of parents, is to train up and qualify their children, for becoming useful and virtuous members of society; this duty cannot be effectually performed without the ability to command obedience, to control stubbornness, to quicken diligence, and to reform bad habits; and to enable him to exercise this salutary sway,
 
 he is armed with power to administer moderate correction
 
 , when he shall believe it to be just and necessary.
 

 *229
 

 State v. Pendergrass
 
 ,
 
 19 N.C. 365
 
 , 365-66 (1837) (emphasis added).
 
 [1]
 
 The Court defined "moderate punishment" not as this phrase might be understood today, but more narrowly to include
 
 any
 
 punishment which did not produce "permanent" injury, including any punishment that "may seriously endanger life, limbs or health, or shall disfigure the child[.]"
 

 Id.
 

 at 366
 
 .
 

 Our Supreme Court further held in
 
 Pendergrass
 
 that even where a punishment does not produce or threaten a permanent injury, a parent may nonetheless be held criminally responsible if he administers the correction to "gratify his own bad passions[.]"
 

 Id.
 

 at 367
 
 . But if a parent inflicts the punishment "honestly" and the punishment does not produce or threaten permanent injury, the law will not question the parent's discretion to choose the
 
 degree
 
 of punishment to inflict: "[A parent] cannot be made penally responsible for error of judgment, but only for wickedness of purpose."
 

 Id.
 

 at 366
 
 .
 

 In conclusion, our Supreme Court stated in
 
 Pendergrass
 
 that a proper instruction informs the jury that a parent is not criminally liable for injuring his child during the administration of corporal punishment "unless the jury could clearly infer from evidence, that the correction inflicted had produced, or was in its nature calculated to produce, lasting injury to the child"
 
 or
 
 "unless the facts [ ] induced a conviction in their minds that the defendant did not act honestly in the performance of duty, according to [a] sense of right, but [rather] under the pretext of duty, [for the purpose of] gratifying malice."
 

 Id.
 

 at 368
 
 .
 

 In 1873, the Court relied on
 
 Pendergrass
 
 to affirm the right of a step-father, acting
 
 in loco parentis
 
 , to administer corporal punishment where the punishment was not "calculated to produce lasting injury."
 
 Alford
 
 ,
 
 68 N.C. at 324
 
 .
 

 Our Supreme Court last cited
 
 Pendergrass
 
 in 1904, when it reaffirmed the holding and approved an instruction which informed the jury of its duty
 
 not
 
 to convict even if it found that "the whipping was more than was necessary, and was attended by bodily pain and suffering," unless "they found that there was either malice or a permanent injury; the latter being an injury which is lasting and will continue indefinitely."
 
 See
 

 Thornton
 
 ,
 
 136 N.C. 610
 
 ,
 
 48 S.E. 602
 
 (1904).
 

 *837
 

 *230
 
 Our Supreme Court has never disavowed the principles set forth in
 
 Pendergrass
 
 regarding a parent's right to discipline their child.
 

 Our General Assembly, though, has since further limited a parent's authority to discipline his child by declaring that a minor is "abused" when a parent uses a "cruel or grossly inappropriate" procedure or device to discipline the minor. N.C. Gen. Stat. § 7B-101(1)(c).
 
 [2]
 

 Applying the above principles to the facts in the present case, we conclude that there was not sufficient evidence from which a jury could find that Defendant's paddling caused or was calculated to cause permanent injury. However, we conclude that there was sufficient evidence from which a juror could find that Defendant acted with malice. For instance, there was evidence that Defendant cursed and yelled at his son prior to administering the paddling. And a juror could find that the paddling in this case was excessive, which is
 
 some
 
 evidence of malice. But we further conclude that a jury could reasonably find based on the evidence that Defendant administered the paddling without malice and that the punishment was not
 
 grossly
 
 inappropriate, regardless of whether the jury might have believed that the paddling was otherwise excessive.
 

 The instruction here allowed the jury to convict if it determined that the punishment administered by Defendant was not "moderate," without giving further guidance as to what constitutes "moderate" punishment, except that the jury was to use their own "reason and common sense." The trial court refused Defendant's request to clarify the term "moderate" as meaning any punishment that did not produce a "lasting" injury. This was reversible error.
 

 Without the clarification, the jury was free to convict Defendant of misdemeanor child abuse even if it determined that Defendant acted honestly but, in their minds, excessively. Therefore, we reverse Defendant's conviction and remand the matter for further proceedings not inconsistent with this opinion.
 

 We note that it would have been proper for the State to request an instruction advising the jury that it could nonetheless convict if it determined that Defendant acted out of "wickedness of purpose,"
 

 *231
 
 irrespective of the extent of the physical injuries.
 
 See
 

 Pendergrass,
 

 19 N.C. at 366
 
 .
 

 REVERSED AND REMANDED.
 

 Judges McCULLOUGH and TYSON concur.
 

 [1]
 

 Pendergrass
 
 was authored by Justice William Gaston, one of our State's most prominent justices (serving from 1833 until his death in 1844), the writer of our State song,
 
 The Old North State
 
 (in 1835), and for whom Gaston County was named (in 1846).
 

 [2]
 

 Our General Assembly has also declared that a school official, when acting in
 
 loco parentis
 
 , may discipline a student when otherwise authorized so long as the official does not inflict physical injury which "requires medical attention beyond simple first aid." N.C. Gen. Stat. § 115C-390.4(5) (2013).