An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1034

Filed 2 July 2025

Cumberland County, No. 22CRS010133-250

STATE OF NORTH CAROLINA

v.

IGNACIO NUNEZ, JR., Defendant.

Appeal by defendant from judgment entered 31 January 2024 by Judge George R. Hicks III in Cumberland County Superior Court. Heard in the Court of Appeals 12 June 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Narcisa Woods, for the State.*

> *Yoder Law PLLC, by Jason Christopher Yoder, for defendant-appellant.*

FLOOD, Judge.

Defendant Ignacio Nunez, Jr. appeals from the trial court's judgment finding him guilty of assault on a female. On appeal, Defendant argues: first, the trial court plainly erred in failing to instruct the jury that it should return a verdict of not guilty if Defendant's touching did not result in a "lasting injury" and was not done out of

"wickedness of purpose"; and second, the trial court erred by denying Defendant's motion to dismiss the assault on a female charge. Upon review, we conclude that, had the trial court provided the desired instruction, there is no reasonable probability the jury would have acquitted Defendant, and the trial court therefore committed no plain error. We further conclude that the State presented substantial evidence in support of a finding that Defendant assaulted a female, and the trial court therefore committed no error in denying Defendant's motion to dismiss.

## I. **Factual and Procedural Background**

J.P.,[1] Defendant's biological daughter, was born on 13 July 2006. J.P. was raised by her biological mother, and from the time J.P. was two years old, until 2022, she had no contact with Defendant. In June 2022, when J.P. was fifteen years old, her mother involuntarily committed J.P. to the Dorothea Dix Section of Cape Fear Valley Medical Center. J.P.'s case was overseen by social worker Freddie Harris, and his supervisor Alissa Brashear, of the Cumberland County Department of Social Services ("DSS"). Together, they developed J.P.'s discharge and safety plans, and in accordance with DSS policy, communicated with both J.P.'s mother and Defendant about the parent with whom J.P. would live upon her discharge from the hospital. Defendant participated in two meetings related to J.P.'s discharge plan, and indicated that he was willing to take her in.

---

[1] A pseudonym is used as agreed upon by the parties and to protect the identity of the juvenile, pursuant to N.C.R. App. P. 42(b).

Prior to J.P.'s discharge, Brashear discussed with Defendant J.P.'s safety plan, which had been developed due to J.P.'s history of running away and engaging in social media conduct that might endanger her safety. J.P.'s safety plan entailed: J.P. giving Defendant her username and password for both her Instagram and Snapchat accounts; Defendant supervising J.P. at all times and monitoring her social media activity; and Defendant obtaining employment and permanent housing. On 17 July 2022, J.P. was discharged from the hospital, and DSS arranged for her and Defendant to stay at the Wood Springs Suite Extended Stay Hotel in Fayetteville, North Carolina (the "hotel"), and for J.P. to meet a forensic interviewer at the Fayetteville Child Advocacy Center (the "CAC") on 19 July 2022, regarding unrelated sexual abuse allegations.

Defendant and J.P. stayed at the hotel from 17 July until 19 July 2022. According to J.P., upon their arrival at the hotel, Defendant became "overly feely, like touchy[,]" and began to "touch[ her] a lot, wanting to hold [her] hand and making . . . awkward comments, having conversations that didn't feel appropriate for a child and [her] father." J.P. told Defendant that his conduct made her feel "uncomfortable[,]" and to this Defendant became "defensive[,]" stating that he would not "sleep in a bed" because he could not "love . . . [and] touch his daughter[.]" Defendant also stated the following "ultimatum": "If you don't allow me to hug you[,] I'm going to move my clothes and my items [and] my personal belongings into the car[,] because this stuff is yours now and I won't sleep in the bed." Defendant then initiated a conversation

with J.P. about the "nature of boys' thoughts," telling her that they all want to sleep with her. During this conversation, while describing how men might "suddenly try to feel" J.P., Defendant held her hand and massaged her shoulders, and while describing how men might try to touch her breasts, Defendant demonstrated by fondling her necklace. While fondling the necklace, Defendant touched "a part of [J.P.'s] breast[,]" and J.P. told Defendant she was uncomfortable with that interaction.

During their stay at the hotel, Defendant also initiated other sexually-oriented conversations with J.P., which included topics of masturbation, "BDSM," graphic sex stories, and sexual kinks, and Defendant suggested purchasing J.P. a sex toy, asking her whether she preferred an "exterior toy" or something that "penetrates" her. On the second night of their stay at the hotel, while J.P. was lying in bed and pretending to be asleep, Defendant approached the bed, pulled the blanket off of J.P, and "hovered over" her. Additionally, during their stay, Defendant had exclusive control of J.P.'s phone and social media, and Defendant used her phone to have social media conversations with her friends, pretending to be J.P. Defendant also used J.P.'s phone to message a man with whom J.P. had previously had an underaged relationship, and propose to this man that he have a "threesome" with J.P. and Defendant. J.P. saw this message and grew worried that Defendant wished to have a sexual relationship with her.

On 19 July 2022, J.P. and Defendant traveled by bus to the CAC to attend

J.P.'s forensic interview. During the bus ride, Defendant suggested that, if J.P. no longer wished to be with him, she should say that he had touched her in her sleep. Upon arriving at the CAC, Defendant expressed his wish to enter the forensic interview room with J.P. but was prohibited from doing so. Before J.P. entered the forensic interview room, Defendant told her that she did not "have to say anything that [she did not] want to[.]" J.P. met with forensic interviewer Darien Korbecki; the interview was video recorded and observed from the observation room by Harris and Detective Freda of the Fayetteville Police Department.[2] During the forensic interview, J.P. told Korbecki that she felt uncomfortable living with Defendant, and gave her a detailed account of Defendant's conduct during their stay at the hotel. J.P. further told Korbecki that she was afraid of Defendant, as she believed he was trying to establish a sexual relationship with her. Korbecki ended the interview and contacted Brashear, who drove to the CAC to retrieve J.P. Brashear found alternative placement for J.P. for the night of 19 July 2022, and Defendant returned to the hotel.

The following morning, Brashear retrieved both J.P. and Defendant to bring them to the DSS office, and during their car ride, Brashear told Defendant that his conduct was inappropriate and had made J.P. feel uncomfortable. When they arrived at the DSS office, Brashear asked Defendant to sit and wait in a conference room, but

---

[2] Detective Freda's first name is not included in the Record on appeal.

Defendant asked her where the bathroom was, and she pointed him towards the bathroom. Brashear then left the conference room to briefly speak with J.P. Upon returning to the conference room, she found Defendant had not yet returned from the bathroom, and after searching, could not locate him anywhere in the DSS office. J.P. was thereafter removed from Defendant's care and placed in foster care.

On 22 July 2022, a warrant for Defendant's arrest was issued, and Defendant was thereafter arrested. On 16 January 2024, Defendant was charged by a bill of indictment with attempted incest, sexual battery, assault on a female, and contributing to the delinquency of a minor. As to the assault on a female charge, the indictment provided that Defendant did "assault and strike" J.P. On 29 January 2024, this matter came on for hearing before the trial court. During evidence, the State presented, in relevant part, testimonies from J.P., Korbecki, and Brashear, as well as a recording of the forensic interview. J.P. testified as to the events during her stay with Defendant at the hotel, and she identified Defendant as the perpetrator in open court. Korbecki testified as to J.P.'s disclosures during the forensic interview, which were consistent with J.P.'s testimonial account. Finally, Brashear testified as to her involvement in this case, and her interactions with Defendant.

At the close of the State's evidence, Defendant moved to dismiss all charges. The trial court granted Defendant's motion as to attempted incest and contributing to the delinquency of a minor, and denied the motion as to the remaining two charges. The trial court thereafter provided its jury instructions, instructing the jury on the

assault on a female charge in accordance with the pattern jury instructions under

N.C.P.I.—Crim. 208.70 and N.C.P.I.—Crim 120.20, and stating:

> For you to find[ D]efendant guilty of this offense, the State
> must prove three things beyond a reasonable doubt. First,
> that[ D]efendant intentionally assaulted [J.P.] by an
> unwanted touching.
>
> Intent, it's a mental attitude, seldom provable by direct
> evidence. It must ordinarily be proved by circumstances
> from which it may be inferred. You arrive at the intent of a
> person by such just and reasonable deductions from the
> circumstances proven as a reasonably prudent person
> would ordinarily draw there from [sic].
>
> An assault. An assault is an intentional offensive touching
> of another person without that person's consent. So . . . the
> State must prove beyond a reasonable doubt, first, that[
> D]efendant intentionally assaulted [J.P.] by an unwanted
> touching. Second, that [J.P.] was a female person. Third,
> that [ D]efendant was a male person at least [eighteen]
> years of age. So if you find from the evidence beyond a
> reasonable doubt that on or about the alleged date[
> D]efendant was a male person at least [eighteen] years of
> age and that he intentionally assaulted [J.P.] by means of
> an unwanted touching and that [J.P.] was a female person,
> it would be your duty to return a verdict of guilty. But if
> you do not so find or you have a reasonable doubt as to one
> or more of these things, it would be your duty to return a
> verdict of not guilty.

Defendant neither objected to the trial court's instructions, nor requested the trial

court provide additional instruction.

On 31 January 2024, the jury returned its verdicts, finding Defendant guilty

of assault on a female, and not guilty of sexual battery. That same day, the trial court

sentenced Defendant to sixty days' imprisonment. Defendant timely appealed.

## II. <u>Jurisdiction</u>

Appeal to this Court lies of right from the final judgment of a superior court pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. <u>Analysis</u>

On appeal, Defendant argues (A) the trial court plainly erred in failing to instruct the jury that it should return a verdict of not guilty if Defendant's touching did not result in "lasting injury" and was not done out of "wickedness of purpose[,]" and (B) the trial court erred by denying Defendant's motion to dismiss the assault on a female charge. We address each argument, in turn.

## A. Jury Instruction

Defendant argues that his touching of J.P. was for the purpose of "imposing discipline on J.P. in accordance with the safety plan[,]" and, as a parent, he may physically discipline his child where the discipline does not result in lasting injury and was not done out of wickedness of purpose; thus, it was plain error for the trial court to not instruct the jury on this standard. We disagree.

While Defendant failed to make a timely request, motion, or objection at trial to preserve this issue for our appellate review, he specifically and distinctly alleges plain error on appeal. *See State v. Lawrence*, 365 N.C. 506, 516 (2012) ("To have an alleged error reviewed under the plain error standard, the defendant must 'specifically and distinctly' contend that the alleged error constitutes plain error." (citations omitted)); N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for

appellate review, a party must have presented to the trial court a timely request, objection, or motion[.]"). As such, we review his argument for plain error. For a defendant to demonstrate plain error, he must satisfy a three-factor test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Carwile*, 909 S.E.2d 913, 919 (N.C. Ct. App. 2024) (citation omitted); *see also Lawrence*, 365 N.C. at 518 (providing that, to demonstrate plain error, "a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty" (citations and internal quotation marks omitted)).

In arguing that the trial court plainly erred in failing to instruct the jury on "lasting injury" and "wickedness of purpose[,]" Defendant relies on *State v. Varner*, where this Court considered whether the defendant was criminally liable for child abuse where he inflicted "physical injury on [his] child in the course of . . . administering corporal punishment." 252 N.C. App. 226, 228 (2017). In concluding there was insufficient evidence to demonstrate the defendant committed child abuse, we provided that while a parent may not intentionally inflict physical injury on his child who is under the age of sixteen, a parent "has the constitutionally protected

paramount right to raise" his child as he sees fit, and "as a general rule, a parent . . . is *not* criminally liable for inflicting physical injury on a child in the course of lawfully administering corporal punishment." *Id.* at 228, 230 (citations and internal quotation marks omitted). We further provided that a parent lawfully administering corporal punishment may nonetheless be found criminally liable where "the jury could clearly infer from the evidence[] that the correction . . . [was] calculated to produce[] lasting injury[,]" *id.* at 229 (citation and internal quotation marks omitted), or the jury could determine from the evidence "that [the d]efendant acted out of 'wickedness of purpose,' irrespective of the extent of the physical injuries[,]" *id.* at 231 (citation omitted).

Here, unlike in *Varner*, Defendant was charged not with child abuse, but with assault on a female. *Id.* at 228. Defendant, however, contends that, despite the difference between the underlying charge of the instant case and that of *Varner*, as "a judge must declare and explain the law arising from the evidence[,]" *State v. Peacock*, 313 N.C. 554, 558 (1985), and the evidence indicated his touching of J.P. was lawful discipline in accordance with her safety plan, he was still entitled to a jury instruction on "lasting injury" and "wickedness of purpose[,]" *see Varner*, 252 N.C. App. at 229–31. We are unpersuaded by Defendant's contention.

As presented above, J.P.'s safety plan entailed: J.P. giving Defendant her username and password for both her Instagram and Snapchat accounts; Defendant supervising J.P. at all times and monitoring her social media activity; and Defendant

obtaining employment and permanent housing.  There is nothing in the Record that tends to indicate Defendant's unwanted touching of J.P.'s hand, rubbing of her shoulders, or touching of her breast were either discipline in accordance with this safety plan, or corporal punishment of any kind.  *See id.* at 228.  Accordingly, as the Record contains no evidence in support of a finding that Defendant's touching was for the purpose of, or constituted, parental discipline, it cannot be said that but for the trial court's failure to instruct on "lasting injury" and "wickedness of purpose"—the absence of which renders parental corporal punishment lawful—there is a reasonable probability the jury would have acquitted Defendant of assault on a female.  *See id.* at 228; *Carwile*, 909 S.E.2d at 919; *see also Lawrence*, 365 N.C. at 518.  Defendant, therefore, has failed to meet his burden of demonstrating plain error, and we find no plain error on part of the trial court.  *See Carwile*, 909 S.E.2d at 919.

## B. Motion to Dismiss

Defendant next argues the trial court erred in denying his motion to dismiss, as the State failed to meet its evidentiary burden in support of the assault on a female charge.  We disagree.

This Court reviews de novo the trial court's denial of a defendant's motion to dismiss.  *State v. Smith*, 186 N.C. App. 57, 62 (2007).  Under such review, we must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense."  *State v. Summey*, 228 N.C. App. 730, 733 (2013)

(citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" and which must be viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *Id.* at 733 (citations and internal quotation marks omitted).

Per North Carolina statute, a defendant commits the misdemeanor offense of assault on a female where he "[a]ssaults a female, he being a male person at least [eighteen] years of age[.]" N.C.G.S. § 14-33(c)(2) (2023). "Assault on a female may be proven by finding either an assault on or a battery of the victim[,]" and "a battery may be prove[n] by evidence of any unlawful touching of a person." *State v. West*, 146 N.C. App. 741, 743–44. (2001) (citation omitted) (cleaned up). This Court has found battery where the defendant "touched [the victim's] breast with his hand[,]" as a battery may exist where the defendant "intentionally touched, however slight, the body of the alleged victim." *Id.* at 742, 744 (internal quotation marks omitted) (cleaned up).

Here, the uncontroverted evidence demonstrates that Defendant—a male over the age of eighteen—touched J.P. on her hand, shoulders, and breast, and this touching was done without J.P.'s consent. *See West*, 146 N.C. App. at 742–44; N.C.G.S. § 14-33(c)(2). Viewing this evidence in the light most favorable to the State, per the above-delineated standard, a reasonable juror may find this evidence adequate to support the finding that Defendant's touching constituted a battery of

J.P.  *See Summey*, 228 N.C. App. at 733; *West*, 146 N.C. App. at 742–44.  As such, the State met its burden of substantial evidence in support of a finding of assault on a female.  *See Summey*, 228 N.C. App. at 733; *West*, 146 N.C. App. at 742–44; N.C.G.S. § 14-33(c)(2).

Defendant, however, further contends that because the indictment alleged Defendant did "assault and strike" J.P., and there was no evidence indicating Defendant struck J.P., the trial court should have granted his motion to dismiss for the State's failure to produce evidence in support of both allegations.  Defendant's contention is unpersuasive.  North Carolina appellate courts have regularly provided that an indictment is sufficient if it "charges the substance of the offense, puts the defendant on notice of the crime, and alleges all essential elements of the crime[,]" and "[a]llegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage."  *State v. Bollinger*, 192 N.C. App. 241, 246 (2008) (quoting *State v. Westbrooks*, 345 N.C. 43, 57 (1996)).  The indictment, here, alleged that Defendant assaulted J.P.—putting him on notice of the essential elements of assault on a female—and as the allegation of Defendant striking J.P. is beyond the essential elements of the charge, it is irrelevant and may be treated as surplusage.  *See id.* at 246; *West*, 146 N.C. App. at 742–44; N.C.G.S. § 14-33(c)(2). Defendant was therefore served with a proper bill of indictment, and as the State met its evidentiary burden in support of the assault on a female charge, the trial court did

not err in denying Defendant's motion to dismiss.  *See Bollinger*, 192 N.C. App. at 246; *Summey*, 228 N.C. App. at 733.

## IV. <u>Conclusion</u>

Upon review, we conclude that, had the trial court instructed the jury on "lasting injury" and "wickedness of purpose[,]" there is no reasonable probability the jury would have acquitted Defendant, and the trial court therefore committed no plain error.  We further conclude that the State presented substantial evidence in support of a finding that Defendant assaulted a female, and the trial court therefore committed no error in denying Defendant's motion to dismiss.

NO PLAIN ERROR In Part, and NO ERROR In Part.

Judges ARROWOOD and WOOD concur.

Report per Rule 30(e).