JUDITH A. KURTZ, PETITIONER v. WINSTON-SALEM / FORSYTH COUNTY
    BOARD OF EDUCATION, AND OMEDA BREWER, BEAUFORT BAILEY,
    BETSY SAWYER, NANCY WOOTEN, DAVEY B. STALLINGS, TOM C.
    WOMBLE, WILLIAM SHEPPARD, AND MARVIN CALLOWAY, JR., IN
    THEIR OFFICIAL CAPACITY AS MEMBERS OF THE WINSTON-SALEM / FORSYTH COUNTY
    BOARD OF EDUCATION, RESPONDENTS

No. 7721SC913

(Filed 16 January 1979)

1. Schools § 13.2 — corporal punishment — policy of school board — no conflict with
   statute — violation of policy by teacher — dismissal

   A school board's policy as to corporal punishment did not conflict with
   G.S. 115-146 which confers on teachers the power to use reasonable force to
   maintain order in the classroom and prohibits school boards from adopting
   policies which interfere with this right and duty, and the evidence was suffi-
   cient to support the court's determination that a probationary teacher violated
   the board's policy in punishing students by striking them about the head or
   grasping them so firmly about the arm as to leave a bruise.

2. Schools § 13.2 — teacher dismissal hearing — private hearing

   A school board was bound by the requirement of G.S. 115-142(j)(1) that a
   teacher dismissal hearing be private, and the teacher's constitutional rights
   were not violated by the board's failure to hold a public hearing at the meeting
   at which she was discharged.

APPEAL by petitioner from *Albright, Judge.* Judgment
entered 30 June 1977 in Superior Court, FORSYTH County. Heard
in the Court of Appeals 22 August 1978.

In the fall of 1976, Judith A. Kurtz, the petitioner-appellant,
was a probationary teacher in the Winston-Salem / Forsyth Coun-
ty School System. On 2 December 1976, the Superintendent of the
Winston-Salem / Forsyth County School Board (referred to herein-
after as the Board) notified Mrs. Kurtz that he would recommend
to the Board that she be dismissed as a teacher for the three
following reasons: (1) Inadequate performance; (2) Insubordination,
and (3) Failure to comply with a reasonable requirement that the
Board had prescribed for the imposition of corporal punishment.
Petitioner-appellant elected to bypass the Professional Review
Committee and requested a hearing before the Board. The Board
held a hearing lasting from 4:00 p.m. on 21 December 1976 until
2:45 a.m. on 22 December 1976. Extensive evidence was taken in
regard to incidents between the petitioner-appellant and several

of her students. For a full understanding of the decision in this case, it is necessary for us to recount the evidence in some detail.

### Evidence

Terri Rhodes, a third grade student, testified:

"And Dwight, he came over there and pushed me. And then I pushed him and hit him back. And she [Mrs. Kurtz] came over there and put him in the back of the line. She came up there and slapped me.

\* \* \*

[I]t was hard."

Ms. Betty Carter Williams, the principal of Hall-Woodward Elementary School testified:

"Mrs. Rhodes eventually came to my school. . . . [S]he came with . . . Terri and two other children. . . . I looked at it and saw fingerprints on the left side of Terri's face.

Mrs. Kurtz said to me that she slapped Terri, when I asked her about it, after Mrs. Rhodes called me. Mrs. Kurtz said something to me at that time about other children. She said that 'While we were at it, I might as well tell you, before some others call you, that there have been some other incidents. . . . I slapped some other children.' . . . She named Jay Davidson, Marshal Brady and James Winchester at that time."

Dr. James A. Adams, Superintendent of Winston-Salem / Forsyth County Schools testified:

"She indicated to me that she had slapped four youngsters and that she was having some personal problems in terms of a move to a new home. . . ."

Orlander Jay Davidson testified:

"the Monday, 22nd of November, . . . . Mrs. Kurtz pinched me. She hit me on the head with a book and she slapped. . . . She pinched me on the arm. She pinched me kind of hard. She pinched me because I was talking on my way up. She slapped me because a boy named Marshal was teasing me. I

was doing nothing to Marshal. She hit me on my face. She did not say anything to me before she hit me. She did not tell me what I was doing wrong. I have seen Mrs. Kurtz hit . . . Terri and Marshall the same day that she slapped me."

Lucy McAlexander testified:

"[My son] came home from school with some unusual marks on his arm. It was on his left arm, and it was above his elbow, and it was a thumb print and four fingers of bruises. I don't really know how long these marks remained on his arm; a couple of weeks, I guess. . . . I received a letter, . . . from Mrs. Kurtz which indicated that she admitted causing those marks. She sent me a letter of apology the day that my husband took James back to school; and showed Mr. Johnson the places on his arm."

Mr. Jack Johnson, the principal of Vienna School, testified:

"it was kind of bruised right under — A tiny bruise right under, right below his arm pit, on the inside of his arm. . . . I told him [Mr. McAlexander] I would talk with Mrs. Kurtz, and I did. And she agreed that she did squeeze the arm too hard. And she related to me that the children . . . were coming in from the playground. . . . And they were lining up at the door. And as some were running, they were pushing and scuffling. And she grabbed them, two or three by the arm, to set them straight in line."

Teresa Thomas testified about Monday, 22 November:

"Mrs. Kurtz smacked me in the face. . . . I hadn't put my pencil down when she asked me to put my pencil down.

\* \* \*

As to whether it was a little tap, very hard, or not so hard, it was middle sized.

\* \* \*

[O]n any day before that Monday, . . . she squeezed my arm. . . . As to whether she squeezed my arm hard or soft, she squeezed it middle.

\* \* \*

[I]t was to get me in line. . . . I do not ever remember her touching me with her fingers.

*   *   *

I did see Mrs. Kurtz hit or slap or touch some of the other students about the face and head. She smacked Terri, James, and Marshal."

Petitioner-appellant testified:

"Both Ms. Williams and Dr. Adams says—say that I said, I slapped five children. And I'm telling you here today, that I did not slap five children. Anyone—once you've slapped one child once, you know it. And you'll never forget it. I told them that I handled four other children in some way physically I had to touch them or move them about the room. I never said I slapped five children. And this was a misunderstanding. And I feel very badly that I'm contradicting what two other people say. But I don't believe—I said I handled them in some way physically."

As to Terri Rhodes, petitioner-appellant testified:

"She stated that I took Dwight by the arm and moved him to the end of the line. I deny that I moved him to the end. I moved him back about three or four children from where she was. That was the first action I took to the best of my recollection.

Then I came back. I don't recall if I said anything to Terri at that time. It all happened [sic] so fast. There was just, the indication she gave me was that she was just not going to stop, and that she wasn't going to stand still. And I thought it just essential that she do so then.

*   *   *

I heard the testimony of Terri. She testified that I smacked her; I call it popping her on the cheek. I took my hand and popped her on the side of the cheek so she'd stop."

As to Jay Davidson, petitioner-appellant testified:

"I heard the testimony of Jay Davidson. I deny that I slapped him. I tapped him on the back of his forehead with two

fingers. And I tapped him on the side of his head with a book, but not hard. And these were merely attention getting devices rather than disciplinary action, in the case of Jay."

Petitioner-appellant also testified:

"There's been some allegations that I grabbed James McAlexander and Teresa Thomas. And on both of these occasions, the students or their parents testified that there were marks or bruises left. I do not have any explanation for the amount of force that I used. As to why these students would have bruises on their arms, they were fighting and I just got them firmly by the arm and put them in line, basically."

As to James McAlexander, petitioner-appellant testified that on one occasion she had to grab him by the arm. She said:

"And three boys, when they came up near the door, and when they got to the line were fighting as they came up to the door. And so I just took them firmly by the arm and put them in the line, and said, 'I don't want any more fighting.' "

At the conclusion of the hearing the Board made findings of inadequate performance and insubordination on the part of the petitioner-appellant. The Board also found that petitioner-appellant had failed to comply with the reasonable requirement the Board had prescribed for the imposition of corporal punishment. This finding was based on findings that the petitioner-appellant had struck students Terri Rhodes and Jay Davidson about the face and head, had grabbed James McAlexander with such force as to bruise his arm and had struck or grabbed students Teresa Thomas and Terri Rhodes on another occasion. The Board ordered that Mrs. Kurtz be dismissed from her employment as a teacher with due consideration given to her application should she reapply for a teaching position for the 1977-1978 school year.

Petitioner appealed to the superior court. The superior court held the findings of the Board relating to inadequate performance and insubordination were not supported by substantial evidence in view of the entire record and overruled them. The superior court held that the findings and conclusions in regard to the corporal punishment administered by the petitioner-appellant to her students were supported by material and substantial evidence in

view of the entire record and affirmed these findings and conclusions. The superior court affirmed the dismissal of Mrs. Kurtz from her position as a probationary teacher with the Winston-Salem / Forsyth County School System.

*William G. Pfefferkorn and Jim D. Cooley, for petitioner-appellant.*

*Hudson, Petree, Stockton, Stockton and Robinson, by W. F. Maready and George L. Little, Jr., for defendant appellees.*

WEBB, Judge.

[1] Petitioner-appellant brings forward several arguments as to why the superior court should be reversed. She contends first that the Board's policy in regard to corporal punishment is in conflict with state law. G.S. 115-146 provides in part:

> Principals, teachers, . . . in the public schools of this State may use reasonable force in the exercise of lawful authority to restrain or correct pupils and maintain order. No county or city board of education or district committee shall promulgate or continue in effect a rule, regulation or bylaw which prohibits the use of such force as is specified in this section.

The Board's Policy No. 5131 provides in Article 8:

"A. School personnel have the authority to use reasonable force to maintain order in the schools. Corporal punishment, when administered, shall be administered fairly and impartially and in the following manner:

> (1) In the principal's office by the principal or teacher with an adult witness present.
>
> (2) Pupils may not be struck or slapped about the face or head.
>
> (3) The parents of the child shall be notified by a school official by telephone, if possible, or in writing."

The Board's administrative regulation No. 51-44.1 further provides that:

"In addition to the specific provisions of that policy, corporal punishment shall be administered in the following manner:

1. Corporal punishment should be used only when other methods of discipline have failed.

2. Students should be advised beforehand that specific acts of misconduct could result in corporal punishment.

3. School officials should not administer corporal punishment when angry or upset.

4. Only a paddle will be used in administering corporal punishment."

The petitioner-appellant contends that in order for the Board's action to be upheld we would have to adopt what she calls a per se rule, that is, that every touching about the face violates the Board's policy. She contends this is so because when the evidence in this case is measured by the rule of *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977), the only finding that can be supported is that she struck the students not as corporal punishment, but to get their attention to keep them from harming others or themselves. Petitioner-appellant contends that by penalizing her for this action the interpretation of the Board's policy puts it in conflict with G.S. 115-146 which confers on teachers the power to use reasonable force to maintain order in the classroom and prohibits school boards from adopting policies which interfere with this right and duty.

We recognize there may be some instances when striking a child is not punishment, but is done to remedy some immediate problem by getting the child to take some action for his own or someone else's safety. However, we do not pass on the question in this case. We hold that under *Thompson v. Wake County Board of Education, supra,* the Board could find that petitioner-appellant administered corporal punishment to the students named in the Board's findings and this corporal punishment violated the Board's policy. We also hold the policy is not proscribed by G.S. 115-146. Under *Thompson,* our courts are required to use the "whole record" test. Looking at the whole record, there is une-

quivocal evidence that Mrs. Kurtz struck the students about the head or grasped them so firmly about the arm as to leave a bruise. There is also unequivocal evidence that this was done not to get their attention or to make them take some action, but to punish them for previous wrongdoing. The petitioner-appellant's own testimony contradicted this evidence, but in considering all the evidence we cannot substitute our judgment for that of the Board. In *Thompson*, the evidence that the teacher had encouraged his students to fight among themselves was inconclusive. The teacher offered evidence which showed the words of the teacher which the Board relied on in that case were actually used to stop students from fighting. In the case sub judice, the evidence of corporal punishment is conclusive. There is some contradictory evidence, but taking all evidence into account we would have to substitute our judgment for that of the Board to reverse.

[2] The defendant's last assignment of error deals with the Board's not having a public hearing at the meeting at which petitioner-appellant was discharged. G.S. 115-142 says in part:

> (j) Hearing Procedure. — The following provisions shall be applicable to any hearing conducted pursuant to G.S. 115-142(k) or (1).

> (1) The hearing shall be private.

The Board's policy provided for a public hearing, but in light of this provision of the statute, the Board repealed this provision of the policy immediately prior to the meeting and went into a private session. Petitioner-appellant contends G.S. 115-142(j)(1) is an anomaly when contrasted with the Open Meetings Law, G.S. 143-318.1 et seq. *See Student Bar Association v. Byrd*, 32 N.C. App. 530, 232 S.E. 2d 855 (1977). It may be an anomaly, but it is the law as adopted by the General Assembly. The Board was bound by it. The petitioner-appellant also contends she was deprived of her constitutional rights by the holding of a private hearing. She relies on *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed. 2d 711 (1977). In that case, the United States Supreme Court held that the Eighth Amendment to the United States Constitution does not bar corporal punishment in schools as a cruel and unusual punishment. The opinion in that case relied upon "the openness of the public school and its supervision by the community afford significant safeguards against the kinds

of abuses from which the Eighth Amendment protects the prisoner." *Ingraham, supra,* at 670. We do not believe *Ingraham* is authority for the proposition that it is unconstitutional not to have an open meeting to discuss the discharge of a public school teacher. Petitioner-appellant also contends it was unconstitutional for the Board not to follow its own stated procedure so far as open meetings are concerned. The Board changed its procedure to comply with the state law. Petitioner-appellant had a full hearing with all procedural safeguards. She has not shown how she was damaged by the change of the Board's policy to comply with the law and we hold it was not unconstitutional for the Board to make this change.

From a reading of the entire record, it appears that Mrs. Kurtz was a new teacher operating under difficult circumstances for her. Nevertheless, we cannot substitute our judgment for that of the Board.

Affirmed.

Judges MORRIS (now Chief Judge) and HEDRICK concur.