SHELLY S. GASPERSOHN, BY AND THROUGH ARNOLD GASPERSOHN, GUARDIAN AD LITEM v. HARNETT COUNTY BOARD OF EDUCATION AND GLENN VARNEY

No. 8411SC1188

(Filed 4 June 1985)

1. Schools § 1; Assault and Battery § 3— corporal punishment—instructions correct

   In an action for assault and battery in which plaintiff alleged that excessive and unreasonable corporal punishment had been administered upon her, the court did not err by not including plaintiff's requested instructions on determining whether reasonable force had been used, that the jury could consider the regulations of the Harnett County Board of Education, and that corporal punishment should never be employed as a first line of punishment for misbehavior. While it would not have been error to include some of the requested instructions, the instruction given was a correct statement of the law applied to the facts of the case. G.S. 115C-390.

2. Schools § 1— corporal punishment—contentions of the parties properly stated

   The trial court did not express an opinion on the evidence while stating the contentions of the parties in an action arising from the use of corporal punishment in a high school by stating that no other alternative was offered when plaintiff was first given in-school suspension, by stating that "nobody held anybody" when recapitulating the evidence as to how corporal punish-

Gaspersohn v. Harnett Co. Bd. of Education

ment was administered, or by stating that plaintiff seemed anxious to take corporal punishment. The issue in the case was not what alternative punishment should have been offered, the evidence showed that no one held plaintiff and the statement did not imply that there was no compulsion to accept corporal punishment, and there was testimony that plaintiff twice requested corporal punishment.

**3. Schools § 1— corporal punishment—no expression of opinion by the trial judge**

In an action arising from the use of corporal punishment in a high school, the trial judge did not express an opinion against plaintiff when he declined plaintiff's request to charge the jury as to the vacillation of the defendants in imposing in-school suspension, by refusing to qualify one of plaintiff's witnesses as an expert in the presence of the jury despite having done so for one of defendants' witnesses, by saying "well, let's get away from band and talk about learning something, suppose it was mathematics?" after evidence of plaintiff's accomplishments in music and band, by allowing evidence for defendant that the paddling which plaintiff received was no different from other corporal punishments administered but sustaining an objection to plaintiff's question of another student about whether she had ever been hit that hard, by sustaining objections to questions propounded to plaintiff's expert witness, and by excluding testimony by the general practitioner who first examined plaintiff.

**4. Constitutional Law § 24.1— corporal punishment—procedural due process**

In an action arising from the use of corporal punishment in a high school, plaintiff's procedural due process rights were satisfied by the common law restrictions on unreasonable punishment and by the remedies for corporal punishment deemed excessive.

**5. Schools § 1— corporal punishment—questions limited—no error**

In an action arising from the use of corporal punishment in a high school, the court did not err by limiting questions concerning whether plaintiff asked for corporal punishment or for an alternative to in-school suspension, whether raking leaves was an alternative to in-school suspension, whether corporal punishment was administered as an alternative to in-school suspension at a junior high school, whether the assistant principal used one or both hands on the paddle on other occasions, whether another girl punished with plaintiff had ever been hit that hard, and the number of "licks" a third girl had received.

**6. Damages § 17.7— corporal punishment—punitive damages dismissed—no error**

There was no error in the dismissal of plaintiff's claim for punitive damages in an action arising from the use of corporal punishment in a high school where the jury found that there was no malice on the part of the assistant principal who had administered the punishment.

**7. Schools § 1; State § 1— corporal punishment not proscribed in North Carolina by the United Nations Charter**

Corporal punishment is not proscribed by international law made applicable to North Carolina by the United Nations Charter.

Judge WHICHARD concurring in the result.

Gaspersohn v. Harnett Co. Bd. of Education

APPEAL by plaintiff from *Bailey, Judge.* Judgment entered 5 January 1984 in Superior Court, HARNETT County. Heard in the Court of Appeals 17 May 1985.

This is an action by plaintiff for assault and battery. The plaintiff alleged that while she was a student at Dunn Senior High School in 1981 Glenn Varney, who was serving as assistant principal administered upon her excessive and unreasonable corporal punishment by striking her six times upon the buttocks and with a paddle. She alleged further that as a result of this punishment she suffered extensive bruising "to both buttock, and permanent psychological injuries."

The evidence showed that on 1 December 1981 the plaintiff, two other girls and a boy skipped school. On 2 December 1981 the plaintiff, as punishment for skipping school, was given six days in-school suspension. In-school suspension is a form of disciplinary action which allows students to stay in school without going to class. Students who are in in-school suspension are responsible for maintaining their schoolwork. At the time the plaintiff and the other two girls received this discipline they were adamant that they did not want to be in in-school suspension and requested that they "receive licks" as an alternative. Mr. Varney explained to them that the rule was that they would have to take three licks for each day of suspension which would be eighteen licks which was too many for them. He asked them to report for in-school suspension and told them that perhaps something could be done in a few days. The girls went to in-school suspension.

After the girls had been in in-school suspension for three days they sent for Mr. Varney and asked him again to let them "receive licks" in lieu of further in-school suspension. At this time Mr. Varney reduced the number of licks each girl was to receive from nine to six and administered them. Each girl was given three licks and each then requested that the punishment should continue. Each girl was then given three more licks. A member of the faculty witnessed the proceedings. The girls were then allowed to return to class.

The plaintiff had bruises on her buttocks for approximately three weeks and a psychologist who examined her diagnosed her as having post-traumatic stress syndrome, a psychological condition which leaves a permanent mental scar.

The Court submitted issues to the jury as to the reasonableness of the force used by Mr. Varney, the permanent injury to the plaintiff, the foreseeability of the injury and damages. The jury answered the first issue as to whether Mr. Varney had used more force than was reasonable in administering corporal punishment in favor of the defendant. The Court entered a judgment dismissing the action and the plaintiff appealed.

*Reid, Lewis and Deese by Renny W. Deese for plaintiff appellant.*

*Morgan, Bryan, Jones and Johnson by Robert H. Jones for defendant appellee Harnett County Board of Education.*

*Teague, Campbell, Dennis and Gorham by C. Woodrow Teague and Dayle A. Flammia for defendant appellee Glenn Varney.*

*DeBank, McDaniel, Heidgerd, Holbrook and Anderson by C. D. Heidgerd for Minnesota Lawyers International Human Rights Committee amicus curiae.*

WEBB, Judge.

This case brings to the Court questions arising from the administration of corporal punishment in the public schools of this state. Corporal punishment is allowed by G.S. 115C-390 which provides:

> Principals, teachers, substitute teachers, voluntary teachers, teacher aides and assistants and student teachers in the public schools of this State may use reasonable force in the exercise of lawful authority to restrain or correct pupils and maintain order. No local board of education or district committee shall promulgate or continue in effect a rule, regulation or bylaw which prohibits the use of such force as is specified in this section.

Prior to the adoption of G.S. 115C-390 there have been two cases in our Supreme Court dealing with corporal punishment. See *Drum v. Miller*, 135 N.C. 205, 47 S.E. 421 (1904), and *State v. Pendergrass*, 19 N.C. 365 (1837). In *Pendergrass* our Supreme Court reversed the conviction of a schoolteacher for assault and battery. The evidence showed that the teacher whipped a six or

seven year old girl so as to cause marks upon her body which disappeared within a few days. The Court said,

> "The jury should have been further instructed, that however severe the pain inflicted, and however in their judgment it might seem disproportionate to the alleged negligence or offence of so young and tender a child, yet if it did not produce nor threaten lasting mischief, it was their duty to acquit the defendant; unless the facts testified induced a conviction in their minds, that the defendant did not act honestly in the performance of duty, according to her sense of right, but under the pretext of duty, was gratifying malice."

In *Drum* our Supreme Court granted a new trial for an error in the charge. In that case the defendant schoolteacher threw a pencil at the plaintiff who was a student in his class. The pencil struck the plaintiff in the eye, inflicting serious injury. The Superior Court instructed the jury that unless they found that a prudent man might have anticipated that the injury complained of would likely result from the defendant's act they should find against the plaintiff on the issue of wrongful injury. Our Supreme Court held that it was not necessary for the jury to find the defendant should have foreseen the particular injury which occurred. The Court said it was necessary for the jury to find only that a permanent injury would be the natural and probable consequences of his act. The Court cited *Pendergrass* and said, "It is undoubtedly true that a teacher is liable if, in correcting or disciplining a pupil, he acts maliciously or inflicts a permanent injury, but he has the authority to correct his pupil when he is disobedient and inattentive to his duties, and any act done in the exercise of this authority and not prompted by malice is not actionable, though it may cause permanent injury, unless a person of ordinary prudence could reasonably foresee that permanent injury of some kind would naturally or probably result from the act."

We believe the pre-G.S. 115C-390 rule from *Pendergrass* and *Drum* is that a teacher has the right to administer corporal punishment to students so long as it is done without malice and to further an educational goal. If a teacher inflicts serious injury on a student the teacher is liable although acting without malice and to further an educational goal if he should have reasonably fore-

seen that a serious or permanent injury of some kind would naturally or probably result from the act. G.S. 115C-390 allows the administration of corporal punishment so long as reasonable force is used and proscribes local school boards from prohibiting it. See *Kurtz v. Board of Education*, 39 N.C. App. 412, 250 S.E. 2d 718 (1979), in which we held that a school board may regulate the manner in which corporal punishment is administered.

In *Baker v. Owen*, 395 F. Supp. 294 (1975), a three judge court held that G.S. 115C-390 does not violate any substantive constitutional rights. The Court in that case prescribed certain procedures that must be followed to protect the procedural due process rights of students who are to receive corporal punishment. In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed. 2d 711 (1977), the United States Supreme Court held that the Eighth Amendment to the United States Constitution which forbids cruel and unusual punishment does not apply to corporal punishment administered in our schools. The Supreme Court held that traditional common law remedies for excessive corporal punishment satisfied the due process requirement of the Fourteenth Amendment. The common law remedy which the Court said applied in most states is that a child could recover for excessive punishment but there can be no recovery if the punishment is reasonable in light of its purpose. We believe the law in North Carolina as to corporal punishment in public schools follows the common law rule as enunciated by the Supreme Court in *Ingraham*.

[1] The appellant's first assignment of error is to the charge. The appellant requested that the Court charge the jury that in determining whether reasonable force had been used that "reasonableness embodies the concept that the use of force is limited to that necessary under the circumstances for the child's discipline and training, and that in evaluating reasonableness you may take into consideration plaintiff's age, sex, physical and mental condition, seriousness of the offense, the attitude and past behavior of plaintiff, the severity of the punishment, the probability of any physical or mental harm, the availability of less severe but equally effective means of discipline, the defendant's anger or malice, the instrument used, and the defendant's tolerance of pain." The appellant also requested that the Court instruct the jury that in relation to Mr. Varney's authority to use corporal

punishment they could consider the regulations of the Harnett County Board of Education. The appellant requested further that the jury be instructed that except for "acts of misconduct which are so antisocial or disruptive in nature as to shock the conscience, corporal punishment should never be employed as a first line of punishment for misbehavior."

The Court charged the jury that a teacher may use reasonable force in the exercise of lawful authority to restrain or correct pupils and maintain order. He explained to them that this included corporal punishment and said, "A teacher may therefore legally inflict temporary pain but may not seriously endanger life, limb, health or disfigure the child or cause any other permanent injury. He cannot lawfully beat the child, even moderately, to gratify his own evil passion. The chastisement must be honestly inflicted in punishment for some dereliction which the pupil understands. If the teacher keeps himself within these limits and his lawful jurisdiction, he must decide the question of the expediency or necessity of the punishment and its degree." The Court charged the jury further that if Mr. Varney failed to exercise ordinary care and inflicted permanent or long lasting injury which was the natural and probable result he would be liable to the plaintiff. We believe this is a correct statement of the law as applied to the facts of this case. It appears that Judge Bailey relied on *Pendergrass* and *Drum* in defining reasonableness as used in the statute. In this we find no error.

While it would not have been error to include some of the plaintiff's requested instructions in the charge we do not believe it was necessary. We believe for example, the law of this state is in compliance with the law in most of our states as outlined in *Ingraham* and Judge Bailey adequately instructed the jury as to the law. We have a statute governing the administration of corporal punishment. If we were to hold that a judge had to charge in accordance with some of the plaintiff's requests for instructions we believe we would be overruling the legislature which we do not have the power to do. We believe that an instruction that corporal punishment should never be employed as a first line of punishment except in cases in which the act of the student is so antisocial or disruptive in nature as to shock the conscience is contrary to the statute. The appellant's first assignment of error is overruled.

In her second assignment of error the appellant contends the Court erred in excluding certain testimony. The appellant concedes it was not error to exclude this testimony if the proper standard was applied by the Court in determining the appropriateness of the corporal punishment administered to the plaintiff. We hold the proper standard was applied. This assignment of error is overruled.

[2]   In her third assignment of error the appellant contends the Court expressed an opinion on the evidence while stating the contentions of the parties. In charging the jury as to the in-school suspension which was first imposed on the plaintiff the Court stated "No other alternative was offered at that time." The defendant asked the Court to charge that boys were given the alternative of raking leaves, which alternative was not offered to the girls. The Court refused to give this instruction. The appellant contends that this gave the jury the impression that only the defendants' offered alternative of corporal punishment or outright suspension "were legitimate considerations." We do not believe the court should have given this requested charge. The question in this case is not what alternative punishment should have been offered in addition to corporal punishment. The defendant Varney was authorized by statute to administer corporal punishment. When the plaintiff chose this form of punishment as an alternative to in-school suspension the question is whether a reasonable amount of force was used and not whether some other form of punishment should have been used.

In recapitulating the evidence as to how corporal punishment was administered the Court said "nobody held anybody." The appellant contends that this implies there was no compulsion on her to accept corporal punishment. We do not believe that is the implication from this statement. The evidence shows that no one held the plaintiff. The jury should have been well aware, however, that she requested corporal punishment in order to be relieved of in-school suspension which was a form of compulsion. The Court in recapitulating the evidence stated that the plaintiff seemed anxious to take corporal punishment. The appellant argues that nowhere in the evidence is there anything which would support this characterization. There was testimony that the plaintiff requested corporal punishment on the day she received the in-school suspension. The evidence was that she sent for Mr. Varney

on the third day of the suspension and again requested it. We believe this supports the Court's characterization. This assignment of error is overruled.

[3] In her fourth assignment of error the appellant contends that several actions of the Court during the trial amounted to an expression of opinion against her. The Court declined a request of the plaintiff to charge as to the vacillation of the defendants in imposing in-school suspension as punishment. The plaintiff's contention in this regard is based on testimony of a former student that she was sent to a detention hall three years before the incident involved in this case. There was no in-school suspension program at Dunn Senior High School at that time. We do not believe this shows any vacillation by the defendants as to punishment.

The appellant also contends that the Court showed its bias against her by refusing in the presence of the jury to find that one of her witnesses was an expert in spite of the fact that the Court made such a finding in the jury's presence for one of the defendants' witnesses. She also argues it was an expression of an opinion for the Court to say "well, let's get away from band and talk about learning something, suppose it was mathematics?" after evidence that she had brought distinction to Dunn High School through her accomplishments in music and band. We do not believe the Court's method of qualifying the expert witnesses or its comments in regard to playing in the band rise to the level of reversible error.

The appellant further contends that the Court consistently rejected her evidence that she was falling behind in her schoolwork while in in-school suspension. She cites nothing in the record that supports this contention. She argues further that it was an expression of opinion for the Court to allow evidence for the defendant that the paddling which the plaintiff received was no different in force from other corporal punishment administered and to sustain an objection to a question asked one of the students paddled that day as to whether she had ever been hit that hard on any other occasion. We do not believe this is an expression of an opinion by the Court. Nor do we believe, as contended by the plaintiff that the manner of the Court's ruling on the testimony or his instructions not to be repetitive were expres-

sions of opinion. The defendant's fourth assignment of error is overruled.

The appellant next assigns error to what she contends is the improper sustaining of objections to questions propounded to her expert witnesses. Dr. Irwin A. Hyman, a practicing psychologist, testified for the plaintiff. He testified that in his opinion as a result of the corporal punishment the plaintiff had a post traumatic stress syndrome, that she had recurring nightmares about the event, she could not talk about it without crying and she had a fear of men who reminded her of Mr. Varney. During the testimony of Dr. Hyman the Court sustained objections to a question as to a letter mailed to him by the plaintiff's mother, to testimony as to the in-school punishment at Dunn High School and the severity of the corporal punishment administered in this case in comparison to other corporal punishments, as well as testimony by Dr. Hyman that the trauma of the plaintiff reminded him of the trauma suffered by women who have been raped. We believe the exclusion of these parts of the testimony of Dr. Hyman was inconsequential.

Dr. John Braswell Smith, a general practitioner, testified that he examined the plaintiff after she had been paddled, that he found bruises on her buttocks that in his opinion could have been painful for several days, and that he saw her two weeks later at which time the bruises had healed. During the testimony of Dr. Smith the Court sustained an objection to a question as to the size of the bruises on the ground such testimony would be repetitive. We find no error in this ruling. It also sustained an objection to a question as to whether the degree of bruising was related to the amount of force used. We believe the answer to this question is self-evident. There was no prejudice to the plaintiff not to have Dr. Smith answer it. The Court also sustained an objection to testimony of Dr. Smith as to his feeling about the bruises. We do not believe Dr. Smith's feelings about the bruises were relevant to this case. The Court also sustained an objection to a question as to how much force would have been required to inflict bruises of the size found on the plaintiff. Assuming this opinion would be within the expertise of Dr. Smith the jury had evidence that corporal punishment was administered to the plaintiff which was very painful to her and the pain could have lasted for several

days. We do not believe it was prejudicial to exclude this testimony. The defendant's fifth assignment of error is overruled.

[4] The plaintiff's sixth assignment of error is based on what she contends is a violation of her procedural due process rights. In *Ingraham v. Wright, supra,* it was held that procedural due process for those on whom corporal punishment is inflicted is satisfied by the common law restrictions on unreasonable punishment and by the remedies for corporal punishment deemed to be excessive. We believe the common law rule as modified by statute in this state satisfies the requirements of *Ingraham.* This assignment of error is overruled.

[5] In her seventh assignment of error the appellant contends that the Court erred in limiting questions propounded to certain witnesses. The plaintiff called Glenn Varney as an adverse witness. Among the questions propounded by the plaintiff was whether he remembered if the plaintiff asked for corporal punishment or whether she asked for an alternative to in-school suspension. The Court sustained an objection to this question as being repetitious. In this we find no error. An objection was also sustained to a question as to whether Mr. Varney did not let the plaintiff rake leaves as an alternative to in-school suspension. There was testimony by Mr. Varney and others that girls were not allowed to rake leaves as were boys as an alternative to in-school suspension because it was not considered proper for girls to rake leaves. We do not believe the plaintiff was prejudiced because Mr. Varney was not allowed to testify to it on this one occasion.

Dana Gage, the guidance counsellor at Coats Junior High School, was called as a witness for the plaintiff. She testified that she was a neighbor of the plaintiff and she saw her the night after the corporal punishment had been administered. She was not allowed to testify as to whether corporal punishment was administered at Coats Junior High School as an alternative to in-school suspension. The question in this case is the reasonableness of the corporal punishment administered to the plaintiff. Whether it was allowed as an alternative to in-school suspension in a junior high school is so tangential to the question in this case that it has little probative value. It was not error to exclude this testimony.

Nicole Heskey was called as a witness by the defendants. She testified that she was one of the three girls who received in-school suspension for skipping school and that she received corporal punishment the same day as the plaintiff. She testified on cross-examination that later in the same school year she again received corporal punishment and an objection was sustained as to whether Mr. Varney at that time used one hand or two on the paddle. It was not error to exclude this testimony. Later in the cross-examination she testified she could not remember whether she had told the plaintiff's attorney that she could not remember whether Mr. Varney held the paddle with one hand or two when she received her first corporal punishment. She was then asked if she remembered whether the plaintiff's attorney had asked her whether he used one hand or two and an objection was sustained to this question on the ground it was repetitious. In this we find no error. Miss Heskey then testified that she had worked in the principal's office and had seen corporal punishment administered to boys. An objection was sustained to a question as to whether Mr. Varney used one hand or two. We do not believe testimony as to whether Mr. Varney used two hands when administering corporal punishment to boys has enough relevance to this case that its exclusion constitutes prejudicial error. An objection was also sustained as to whether she had ever been hit that hard "before by anybody." Any testimony elicited by this question would be completely irrelevant to this case.

Roger Lee McCoy testified for the defendants that he was employed as police school liaison officer in the Harnett County School System at the time the corporal punishment was administered to the three girls and he was a witness to it. On cross-examination he was asked how many licks were given to Catherine Renee Bynum, one of the girls who received the corporal punishment. An objection was sustained to this question. Any testimony elicited by this question would have been cumulative. It was not error to exclude it. The appellant's seventh assignment of error is overruled.

[6] In her last assignment of error the appellant argues it was error to dismiss her claim for punitive damages. She contends punitive damages should be awarded when a wrong is done in a willful manner or under circumstances of rudeness, oppression, or in a manner which evidences a reckless and wanton disregard of

plaintiff's rights. See *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). The jury did not reach the damage issue and if there had been error in this regard it would not be prejudicial. The jury under proper instructions from the Court found there was not malice on the part of Mr. Varney. We do not believe there was sufficient evidence to submit an issue of punitive damages and the Court did not commit error by dismissing the claim for punitive damages.

[7] The amicus curiae has filed a brief in which it argues that the United States has ratified the United Nations Charter which makes it the supreme law of the land and a part of the law of North Carolina. It contends that international law proscribes corporal punishment and it is made a part of our law by the Charter. The amicus curiae argues we should hold that corporal punishment is not permitted in this state. The appellant in oral argument declined to adopt the argument of the amicus curiae. The United States Supreme Court in *Ingraham* did not mention the United Nations Charter or the application of international law. We do not believe we should hold that international law made applicable to North Carolina by the United Nations Charter proscribes corporal punishment.

No error.

Chief Judge HEDRICK concurs.

Judge WHICHARD concurs in the result.

Judge WHICHARD concurring in the result.

I agree with the majority that: *State v. Pendergrass*, 19 N.C. 365, 367-68 (1837), permits corporal punishment without criminal liability "however severe the pain inflicted, and however . . . disproportionate to the alleged . . . offense" if the punishment does not produce permanent injury or was not inflicted to gratify the educator's malice; and that *Drum v. Miller*, 135 N.C. 205, 205, 47 S.E. 421, 422 (1904), enlarges upon the law by permitting the educator to inflict permanent injury without civil liability (there "inflicting a very painful and serious wound, and causing partial, if not total, blindness" by throwing a pencil at a student) if done

without malice and in the exercise of lawful authority, unless the injury is reasonably foreseeable.

I do not agree, however, that the court properly relied on *Pendergrass* and *Drum* exclusively in defining reasonableness as used in G.S. 115C-390. I disagree on the basis of my reading of *Ingraham v. Wright*, 430 U.S. 651, 51 L.Ed. 2d 711, 97 S.Ct. 1401 (1977), and what appears to be the legislative intent behind the enactment of G.S. 115C-390.

The Court in *Ingraham* held that the Eighth Amendment did not apply to disciplinary corporal punishment of public school children, *id.* at 664, 51 L.Ed. 2d at 725-26, 97 S.Ct. at 1409, and that due process did not require prior notice and a hearing. *Id.* at 682, 51 L.Ed. 2d at 737, 97 S.Ct. at 1418. It so held, in part, because it determined that teachers and administrators are subject to the legal constraints of the common law whereby any punishment exceeding that reasonably necessary for the proper education and discipline of the child could result in civil and criminal liability under state law, *id.* at 677, 51 L.Ed. 2d at 734, 97 S.Ct. at 1415, and because it determined that these common law remedies were sufficient without advance procedural safeguards. *Id.* at 680, 51 L.Ed. 2d at 735-36, 97 S.Ct. at 1417.

In discussing the common-law test of reasonableness the Court noted that "early cases viewed the authority of the teacher as deriving from the parents." *Id.* at 662, 51 L.Ed. 2d at 724, 97 S.Ct. at 1407. *See, e.g., Pendergrass*, 19 N.C. at 365 ("[T]he power which the law grants to schoolmasters and teachers, with respect to the correction of their pupils . . . is analogous to that which belongs to parents, and the authority of the teacher is regarded as a delegation of parental authority."); *see also Drum*, 135 N.C. at 153, 47 S.E. at 425. "The concept of parental delegation," the Court noted, however, "has been replaced by the view—more consonant with compulsory education laws—that the State itself may impose such corporal punishment as is reasonably necessary. . . ." *Ingraham*, 430 U.S. at 662, 51 L.Ed. 2d at 724, 97 S.Ct. at 1407. Thus, corporal punishment is not contingent on parental approval. *See, e.g., Baker v. Owen*, 395 F. Supp. 294 (M.D.N.C. 1975), *aff'd*, 423 U.S. 907, 46 L.Ed. 2d 137, 96 S.Ct. 210 (1975).

I believe G.S. 115C-390 was enacted in 1955 not to codify the 1837 and 1904 case law of *Pendergrass* and *Drum*, but to legislate

a new standard, that of "reasonable force" in the exercise of lawful authority to restrain or correct pupils and maintain order in the public schools. While the absence of permanent injury or disfigurement, foreseeable permanent injury, or malice may be evidence of the reasonableness of the force used, I do not believe instructions which refer to these elements alone are adequate under the statute. Rather, the court should allow evidence and instruct according to the guidelines the United States Supreme Court provides in *Ingraham*:

> All of the circumstances are to be taken into account in determining whether the punishment is reasonable in a particular case. Among the most important considerations are the seriousness of the offense, the attitude and past behavior of the child, the nature and severity of the punishment, the age and strength of the child, and the availability of less severe but equally effective means of discipline.

*Ingraham*, 430 U.S. at 662, 51 L.Ed. 2d at 724-25, 97 S.Ct. at 1408. *See also Baker*, 395 F. Supp. 294, 297 ("reasonable" and "lawful" in the North Carolina statute embody traditional tort concept of privilege to use only that force necessary under the circumstances).

I thus find the instructions based solely upon *Pendergrass* and *Drum*, and not incorporating the foregoing from *Ingraham*, inadequate. I do not find, however, that plaintiff has carried her burden of showing prejudice therefrom. Given the facts—plaintiff's age and level of maturity, her specific repeated requests to receive "licks" instead of in-school suspension, the assistant principal's hesitancy to administer corporal punishment and his reduction of the number of "licks" administered, and the brevity of the discomfort suffered by plaintiff—I do not believe the jury would have rendered a different verdict on different instructions. I therefore concur in the result.