IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-120

Filed 6 August 2024

Montgomery County, No. 21 CRS 50911

STATE OF NORTH CAROLINA

v.

KRISTA MARIE FREEMAN

Appeal by Defendant from judgment entered 27 March 2023 by Judge Patrick Thomas Nadolski in Montgomery County Superior Court. Heard in the Court of Appeals 12 June 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Narcisa Woods, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David S. Hallen, for the Defendant.*

WOOD, Judge.

Krista Freeman ("Defendant") appeals from a judgment entered upon a jury verdict finding her guilty of felony child abuse resulting in serious physical injury. On appeal, Defendant raises three issues, including the challenge of two unpreserved objections to the jury instructions, and that the trial court erred when it denied her motion to dismiss. For the reasons that follow, we hold Defendant received a fair trial free from error.

## I. Factual and Procedural Background

This appeal stems from injuries sustained by the minor child, Brandon[1], who was five years old and in the first grade at the time of the abuse. Brandon lived with his biological mother, Tiffani Pike, and Tiffani's fiancée, Defendant. Despite no biological relation, Brandon called Defendant "momma" and seemingly regarded her as his second mom. On 21 September 2021, Brandon got into an altercation with another student at the end of the school day. As he waited to board the school bus, Brandon kicked the student, and the children began pushing one another. Brandon's teacher separated the students and then ensured they loaded the bus safely. Once the children left, his teacher called Brandon's home to discuss the incident; Defendant answered the phone. She informed Defendant of what had happened that afternoon and that she continuously had behavioral issues with him in class. Defendant apologized for Brandon's behavior, stated they were having similar issues at home, and that Ms. Pike would be upset to hear about this situation.

When Brandon arrived at his bus stop, Defendant was waiting. The bus monitor, known as "Ms. Mollie" around school, observed Brandon exit the bus and heard Defendant say to Brandon "get your ass in the car." As punishment for the events at school, Defendant made Brandon run in place for at least forty-five minutes. Brandon did not attend school the next day but returned to school the following day on 23 September 2021. On the morning of his return to school, his bus monitor Ms.

---

[1] A pseudonym is used to protect the identity of the juvenile pursuant to N.C. R. App. P. 42(b).

Mollie noticed Brandon was moving very slowly as he walked up the steps of the school bus and that it hurt him to get up the stairs. She approached him and he stated, "Ms. Mollie, I'm in so much pain." Once at school, Brandon's teacher also made similar observations. She observed that Brandon looked very uncomfortable walking, was not walking flat footed, and kept saying that his feet hurt. The teacher notified the guidance counselor about the situation who then reported the matter to Montgomery County Department of Social Services ("DSS").

Na'La Brown, a social worker with DSS, came to the school to assess Brandon. Initially, she noticed him walking on his heels in a "waddle." The bottoms of his feet were red and swollen. When asked about his feet, Brandon told Ms. Brown that he had been running in place from lunchtime until dinner time. She further observed bruises on his cheeks; knots on his cheeks and cheekbones; darkened under-eyes; a cut on his eyebrow; knots on the top of his head; and a large, scabbed knot on the back of his head. When asked about those injuries, Brandon stated one of the knots on his face was from a time when he slipped and fell while getting a drink out of the refrigerator for "momma." He also told Ms. Brown that the knot on the center of his head was from an incident when "a ghost hit him in the head with a broom" and the name of the ghost was "Michael Freeman." Ms. Brown asked Brandon to undress so she could check for more injuries and photograph his condition. She discovered more bruises on his legs and a larger, puffy bruise spanning from the bottom of his buttock

to the back of his knee. Afterwards, Brandon returned to his classroom and Ms. Brown left the school to visit Brandon's residence.

Ms. Brown arrived at the home and spoke with Ms. Pike and Defendant. She informed them that DSS received a call about Brandon's injuries and appearance at school and needed them to come into the DSS office to have a conversation with Brandon present. Despite some resistance from Ms. Pike, Defendant informed Ms. Brown that they would get ready and meet her at the DSS office. Ms. Brown returned to the school to get Brandon and take him to the DSS office. As they were driving, Brandon complained that his feet hurt and asked if she could carry him when they arrived. Upon arrival, Brandon met with two law enforcement officers who made similar observations to Ms. Brown. The officers observed wounds and bruises on his face; a wound on the back of his head; red and swollen feet; him standing with his right leg and foot pointed outward bearing the majority of his weight on his left leg; he waddled when he walked; and that he needed assistance to stand up, undress, dress, and sit down. The officers photographed Brandon's injuries and recorded a video of him walking.

After the officer's examination, Brandon sat in Ms. Brown's office where he ate and watched videos while she completed paperwork. Ms. Pike and Defendant arrived at the DSS office where they were asked by the officers if they were willing to speak at the Sheriff's office. They agreed. Defendant was interviewed first and was questioned about Brandon's injuries and the form of punishment used when Brandon

misbehaved.  Defendant admitted to using several forms of punishment, including running in place; running laps around the house; standing in a corner and holding one foot up if he cried, lasting between five minutes to an hour and a half; doing "yard work" which consisted of throwing objects in the dumpster; and flipping cinder blocks across the yard until he reached the dumpster.  The time per punishment varied, with the time increasing by five-minute intervals if Brandon cried.  Defendant further admitted that on the night prior, Brandon's punishment had been to run in place for forty-five minutes and that this form of punishment had been used the previous week approximately three to four times. Defendant also stated that she would make Brandon walk to the bus stop less than one mile from their home, while she drove her vehicle in front of him.  She explained that Brandon sustained the injury on the back of his head while he was walking to the bus stop because he fell on the gravel.  She reported that some of the bruising on his leg was from a time when he got stuck in the dumpster while throwing objects away.  Lastly, Defendant stated she had spanked him before, but he responded by laughing, so now she just threatens him with a "butt whooping."  After Defendant and Ms. Pike were interviewed, the officer placed them both under arrest.  Defendant was charged with felony child abuse resulting in serious injury.

Thereafter, Brandon was taken to the hospital for an assessment of his injuries.  The doctor who evaluated Brandon noted excessive bruising, an abrasion on his head, and swelling on his feet.  The doctor reported that Brandon's evaluation

raised "some red flags" and while his bruising did not seem "accidental," he could not definitively say what caused his injuries. He was also concerned about the swelling on Brandon's feet, as that was unusual for a five-year-old. Ultimately, after a series of tests and scans, the doctor advised that Brandon receive "supportive care, Tylenol, Motrin, [and] icing." After his evaluation, Brandon was taken to his first foster care placement.

On 4 October 2021, approximately two weeks after Brandon came into DSS care, Ms. Brown took Brandon to the Butterfly House Child Advocacy Center for physical and mental evaluation. During his physical examination, Brandon told the nurse "momma hit him with a belt", that both parents would shut his door so that he could not get food, that he felt "a little bit scared" at home, and that his parents instructed him to not say that he had been hit. The nurse described his physical appearance as slender with some overall bruising indicative of non-accidental trauma. After reviewing all the information in Brandon's case and information from her own examination, the nurse concluded that Brandon was physically and emotionally abused. She further concluded that there may be grounds for neglect based on the number of cavities Brandon had and how he, at times, was not allowed to access food. The nurse recommended dental care and trauma-focused behavioral therapy counseling.

He began therapy on 28 September 2022 at Sandhills Pediatrics, where he saw Ms. Willms for post-traumatic stress treatment. During the sessions, Brandon

expressed love and protection towards his parents, but also trouble with how his parents treated him. During one particular session, Brandon explained that he was nervous about beginning unsupervised visits and was worried about Ms. Pike and Defendant getting angry at him. During another session he shared that "bad things happen for bad behavior" and "if he would cry, he would get hit with a belt."

On 4 October 2021, Defendant was indicted for felony child abuse inflicting serious physical injury to Brandon, including bruised, swollen, unmoving feet and legs, resulting in pain. Defendant came on for trial during the 20 March 2023 session of Montgomery County Superior court. At trial, after the State rested its case, Defendant moved to dismiss based on insufficiency of evidence. The trial court denied the motion. Following the close of Defendant's evidence, Defendant renewed the motion to dismiss, and the trial court again denied the motion. At the charge conference, neither party objected to the proposed jury instructions nor requested that a lesser-included instruction be submitted to the jury. The trial court instructed the jury in accordance with the pattern jury instructions on felony child abuse by reckless disregard for human life in the care of a child resulting in serious physical injury. N.C.P.I.-Crim. 239.55D. The jury returned a verdict of guilty to felony child abuse resulting in serious physical injury. The trial court sentenced Defendant to 13 to 25 months of imprisonment. The trial court suspended Defendant's sentence with the condition that she serve four months in the local jail and five years on probation following release. Defendant gave oral notice of appeal in open court.

## II.    Analysis

Defendant argues the trial court erred (1) in failing to instruct the jury on the lesser-included offense of misdemeanor child abuse; (2) in denying Defendant's motion to dismiss the charge of felony child abuse resulting in serious injury; and (3) by failing to instruct on a parent's right to administer corporal punishment.

### A. Misdemeanor Child Abuse

Defendant first asserts that the trial court plainly erred when it failed to instruct the jury on misdemeanor child abuse as a lesser-included offense of felony child abuse resulting in serious injury.  The State contends because Defendant did not request an instruction on the lesser-included offense, did not object to the proposed instructions, and did not request any special instructions, such failure amounts to invited error, precluding plain error review.  We disagree.  Defendant's failure to request the jury instruction does not equate to invited error.

"Our courts have consistently applied the invited error doctrine when a defendant's affirmative actions directly precipitate error." *State v. Miller*, 289 N.C. App. 429, 433, 889 S.E.2d 231, 234 (2023) (citations omitted).  However, "our courts have declined to apply the invited error doctrine where such specific and affirmative actions are absent." *Id*. (citations omitted).  In *State v. Hooks*, the defendant was given "numerous opportunities" to object to the proposed jury instructions and each time "indicated his satisfaction with the trial court's instructions." 353 N.C. 629, 633, 548 S.E.2d 501, 505 (2001).  In that case, our Supreme Court reviewed the instructional

error under the plain error standard, rather than under the invited error doctrine. Here, Defendant did not object to the jury instructions and did not request an instruction on the lesser-included offense. Like *Hooks*, Defendant had the opportunity to object and ultimately indicated her assent to the instructions. However, this does not constitute an affirmative act; rather, it is the failure to object that is considered on appeal. Accordingly, we decline to apply the invited error doctrine and review Defendant's argument under the plain error standard.

Under plain error, "a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (cleaned up). Stated differently, a defendant must establish that "absent the error the jury probably would have reached a different verdict." *Id.* (cleaned up). Moreover, "it must be probable, not just possible" that a different verdict would have been reached. *State v. Juarez*, 369 N.C. 351, 358, 794 S.E.2d 293, 300 (2016) (citation omitted). The standard is applied "cautiously and only in the exceptional case", which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (cleaned up).

To determine whether Defendant was entitled to an instruction on the lesser-included offense of misdemeanor child abuse, we must assess if "the evidence would

permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002) (citations omitted). However, "when the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the trial judge to refuse to instruct [the jury] on the lesser offense." *State v. Hardy*, 299 N.C. 445, 456, 263 S.E.2d 711, 718-19 (1980) (citation omitted). Moreover, the trial judge must instruct the jury as to the lesser-included offense if: "(1) the evidence is equivocal on an element of the greater offense so that the jury could reasonably find either the existence or the nonexistence of this element; and (2) absent this element only a conviction of the lesser included offense would be justified." *State v. Whitaker*, 307 N.C. 115, 118, 296 S.E.2d 273, 274 (1982) (citation omitted).

Here, Defendant was charged under N.C. Gen. Stat. § 14-318.4(a5) for felonious child abuse resulting in serious physical injury, which is defined as:

> (a5) A parent or any other person providing care to or supervision of a child less than 16 years of age whose willful act or grossly negligent omission in the care of the child shows a reckless disregard for human life is guilty of a Class G felony if the act or omission results in serious physical injury to the child.

By contrast, the separate, lesser offense of felony child abuse inflicting serious physical injury is misdemeanor child abuse, which states:

> (a) Any parent of a child less than 16 years of age, or any other person providing care to or supervision of such child,

- 10 -

who inflicts physical injury, or who allows physical injury to be inflicted, or who creates or allows to be created a substantial risk of physical injury, upon or to such child by other than accidental means is guilty of the Class A1 misdemeanor of child abuse.

N.C. Gen. Stat. § 14-318.2(a).  Thus, one difference between the two offenses is the degree of injury to the child.  "Serious physical injury" is defined as "[p]hysical injury that causes great pain and suffering.  The term includes serious mental injury." N.C. Gen. Stat. § 14-318.4(d)(2).  This Court has outlined factors to determine whether an injury is a "serious physical injury," including: (1) hospitalization, (2) pain, (3) loss of blood, and (4) time lost from work. *State v. Romero*, 164 N.C. App. 169, 172, 595 S.E.2d 208, 210 (2004) (citation omitted).  If it is injury to a child, "courts should also review whether the child was unable to attend school or other activities." *State v. Williams*, 184 N.C. App. 351, 356, 646 S.E.2d 613, 616 (2007).  Determining whether an injury satisfies the "serious physical injury" standard is generally a decision for the jury. *Id.* (citations omitted).

Defendant argues that Brandon's injuries satisfied the "physical injury" standard under misdemeanor child abuse rather than the "serious physical injury" standard under felony child abuse.  Specifically, Defendant asserts that Brandon's injuries of "swollen feet and a bruise" are insufficient to meet the serious physical injury threshold because the injuries did not require hospitalization, result in a loss of blood, nor led to great pain and suffering.  Further, Defendant points to evidence tending to show that Brandon self-reported a pain level of zero at the hospital and

the doctor only recommended "supportive care, Tylenol, Motrin, [and] icing, if needed." Therefore, Defendant contends the evidence was equivocal on whether Brandon's injuries were "serious physical injuries" or "physical injuries" such that the jury likely would have found Defendant guilty of misdemeanor, rather than felonious, child abuse.

We first note, "[t]here is no requirement in the statute or in our case law that an injury require immediate medical attention in order to be a 'serious physical injury.'" *Williams*, 154 N.C. App. 176, 180, 571 S.E.2d 619, 622 (2002). The need for medical attention may be considered but it is not an element that the State is required to prove. *See Hardy*, 299 N.C. at 456, 263 S.E.2d at 718-19. Instead, the evidence must be "clear and positive" that Brandon sustained injuries that resulted in "great pain and suffering." *Id.*; *see also* N.C. Gen. Stat. § 14-318.4(d)(2). We hold that the evidence presented at trial sufficiently satisfied this requirement.

Defendant admitted that she punished Brandon by forcing him to run in place for forty-five minutes on the day before he was taken into DSS' care. She further informed law enforcement that this type of punishment was used approximately three to four times the week prior. Brandon did not attend school the next day, *and* upon his return to school the following day, the bus monitor observed that Brandon moved slowly and was in pain when he climbed the stairs. Brandon told the bus monitor "I'm in so much pain." Brandon's teacher testified that he looked uncomfortable when he walked and that he continuously complained that his feet

hurt. Ms. Brown, the social worker, noticed that Brandon walked with a "waddle" and that his feet were red and swollen. Later, Brandon asked Ms. Brown to carry him into the DSS office because it hurt to walk. Law enforcement officers observed that Brandon's right leg and foot were pointed outward, and that he put most of his weight on his left leg. Additionally, Brandon needed help to stand up, undress, dress, and sit down. When Brandon was evaluated at the hospital, the doctor noted that his injuries raised "red flags," the bruising appeared nonaccidental, and the swelling on his feet was unusual for a five-year-old child. Further, at trial the jury was shown photographs of Brandon's injuries and the video taken by law enforcement that showed Brandon's inability to walk correctly.

Defendant also admitted to other types of punishment that may have contributed to Brandon's injuries. Some punishments included flipping cinder blocks across the yard to a dumpster, standing in the corner lifting one foot up at a time, doing laps around the house, and walking to the bus stop as she drove her vehicle in front of him. Defendant acknowledged that the length of the punishment was dependent upon whether Brandon cried. Crying extended the time. Defendant argues that because the indictment only lists "bruised, swollen, unmoving feet and legs," the other injuries and forms of punishment should not be considered when analyzing the severity of Brandon's injuries. However, Defendant disclosed to law enforcement the different forms of punishment she used, which are all relevant when considering Brandon's condition.

"Injuries are serious as a matter of law when the evidence is not conflicting and is such that reasonable minds could not differ on the serious nature of the injuries inflicted." *State v. Church*, 99 N.C. App. 647, 656, 394 S.E.2d 468, 473 (1990) (citation omitted). In totality, the evidence here demonstrated Brandon experienced "great pain and suffering" and that his injuries were such that a reasonable mind could not differ on the serious nature of Brandon's condition. N.C. Gen. Stat. § 14-318.4(d)(2); *Id.* The undisputed testimonial evidence provided by the bus monitor, his teacher, the DSS social worker, and law enforcement officers, revealed Brandon was in great pain and could not walk properly. Brandon confided in these individuals, expressing the amount of pain he was in, and even asked to be carried because it hurt him to walk. The video and photographs shown to the jury depicted bruising, swelling, the outward direction that his right leg faced when standing, and showed him struggling to walk. A punishment that results in a child being unable to walk normally and repeatedly expressing to others that he was in pain is undoubtedly of a "serious nature." *Id.* For these reasons, we hold that the injuries Brandon sustained, as a result of punishment by Defendant, are within the scope and level of severity of a "serious physical injury." N.C. Gen. Stat. § 14-318.4(a5). Thus, because the evidence is clear as to the elements of felony child abuse inflicting serious physical injury, a lesser-included instruction on misdemeanor child abuse was unwarranted. The trial court did not err, much less plainly err, in not instructing the jury on misdemeanor

child abuse as a lesser-included offense of felony child abuse resulting in serious injury.

**B. Motion to Dismiss**

Defendant next challenges the trial court's denial of her motion to dismiss the charge of felonious child abuse based on insufficient evidence of "serious physical injury" and "reckless disregard for human life." We review the denial of a motion to dismiss *de novo. State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). When ruling on a motion to dismiss, the trial court assesses whether the State presented substantial evidence of each essential element of the offenses charged. *State v. Roddey*, 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Wilkins*, 208 N.C. App. 729, 731, 703 S.E.2d 807, 809 (2010) (citation omitted). "[T]he trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455–56 (2000) (citation omitted). "The evidence must be viewed in the light most favorable to the State. Contradiction and discrepancies in the evidence are to be resolved by the jury." *State v. Wilson*, 181 N.C. App. 540, 542, 640 S.E.2d 403, 405 (2007) (cleaned up).

As discussed above, Defendant was convicted of felonious child abuse under N.C. Gen. Stat. § 14-318.4(a5). "Under § 14–318.4(a5), a parent of a young child is

guilty of [felony] child abuse if the parent's willful act or grossly negligent omission in the care of the child shows a reckless disregard for human life *and* the parent's act or omission results in serious [physical] injury to the child." *State v. Frazier*, 251 N.C. App. 840, 841, 795 S.E.2d 654, 656 (2017) (cleaned up). As noted previously in our discussion of the "serious physical injury," the State presented sufficient evidence that Brandon sustained injuries that resulted in "great pain and suffering." N.C. Gen. Stat. § 14-318.4(d)(2). Likewise, the State presented sufficient evidence to allow a reasonable jury to infer that Brandon suffered a serious physical injury as a result of Defendant's actions. Therefore, we hold the trial court did not err in denying Defendant's motion to dismiss as to this element under N.C. Gen. Stat. § 14-318.4(a5).

Defendant further argues that her actions do not rise to the level of "reckless disregard for human life." *Id.* The child abuse statute does not explicitly define what is considered "reckless disregard." However, in *Oakman*, this Court held "culpable or criminal negligence may satisfy the intent requirement of felonious child abuse." *State v. Oakman*, 191 N.C. App. 796, 801, 663 S.E.2d 453, 457 (2008). Further, "[c]ulpable or criminal negligence has been defined as such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Id.* (citation omitted).

In the present case, Defendant contends "[w]hile [she] did discipline Brandon, she remained attentive as to his medical condition by providing water [breaks while

running] and the aftermath of this running in place did not require any medical care beyond foot soaks and lotion." We are unpersuaded. When viewing the evidence in the light most favorable to the State, it shows that Brandon suffered injuries due to Defendant's carelessness and indifference towards Brandon's well-being. This is exhibited by Defendant's forcing Brandon to run in place upwards of forty-five minutes as a form of punishment the day before and "three to four times" the week prior to him being taken into DSS' care with additional time being added if he cried during the punishment. Defendant's actions ultimately resulted in Brandon being temporarily unable to walk normally. Providing Brandon with water breaks and the remedy of foot soaks and lotion does not assuage Defendant's indifference towards Brandon's health and safety. Furthermore, with the crime of felony child abuse, "[t]he evil the legislature seeks to prevent is the performance of a act upon a child, by one charged with the care of the child, inflicting serious bodily injury." *Oakman*, 191 N.C. App. at 799, 663 S.E.2d at 456 (citations omitted). Consistent with this purpose, Defendant was entrusted with the care of Brandon, but chose to administer various types of punishments which were reckless, unsafe, and led to Brandon experiencing injuries and pain. Thus, we hold the State presented substantial evidence of "serious physical injury" and "reckless disregard for human life." Accordingly, the trial court did not err when it denied Defendant's motion to dismiss the charge of felony child abuse.

## C. Corporal Punishment Instruction

Defendant's final argument on appeal is that the trial court plainly erred when it failed to provide the jury with an instruction on lawful corporal punishment. Defendant did not preserve this challenge during trial; therefore, this unpreserved objection is reviewed under the plain error standard. *State v. Williams*, 291 N.C. App. 497, 501, 895 S.E.2d 912, 916 (2023) (citation omitted). "[E]ven when the plain error rule is applied, [i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *State v. Collington*, 375 N.C. 401, 411, 847 S.E.2d 691, 698 (2020) (cleaned up).

"Parents have a constitutional right to raise their children as they see fit, including, in this State, using corporal punishment within certain limits." *State v. Demick*, 288 N.C. App. 415, 437, 886 S.E.2d 602, 618 (2023). Accordingly, "as a general rule, a parent (or one acting *in loco parentis*) is *not* criminally liable for inflicting physical injury on a child in the course of lawfully administering corporal punishment." *Id.* (citation omitted). However, a parent is not exempt under this principle when:

> (1) where the parent administers punishment which may seriously endanger life, limb or health, or shall disfigure the child, or cause any other permanent injury; (2) where the parent does not administer the punishment honestly but rather to gratify his own evil passions, irrespective of the physical injury inflicted; or (3) where the parent uses cruel or grossly inappropriate procedures or devices to modify a child's behavior.

*State v. Varner*, 252 N.C. App. 226, 228, 796 S.E.2d 834, 836 (2017) (cleaned up). Within these limitations, a parent may still be held criminally responsible if, from the evidence, it would lead a jury to infer "a conviction in their minds that the defendant did not act honestly in the performance of duty, according to a sense of right, but rather under the pretext of duty, for the purpose of gratifying malice." *Id.* at 229, 796 S.E.2d at 836 (cleaned up).

As a preliminary matter, the constitutional protection for parents to raise their children "as they see fit," including the limited use of corporal punishment, may be raised by a parent or one acting in *loco parentis*. *Demick*, 288 N.C. App. at 437, 886 S.E.2d at 618. The *loco parentis* relationship is "established where the person intends to assume the status of a parent—by taking on the obligations incidental to the parental relationship, particularly that of support and maintenance." *Gibson v. Lopez*, 273 N.C. App. 514, 521, 849 S.E.2d 302, 306 (2020) (cleaned up). However, one is not in *loco parentis* "from the mere placing of a child in the temporary care of other persons by a parent or guardian of such child" rather, "it is a question of intent to assume parental status." *Id.* at 519, 849 S.E.2d at 305 (cleaned up). Here, Defendant is not Brandon's biological parent and there is insufficient evidence to support the conclusion that at the time of the abuse she was acting in *loco parentis*. Defendant is the fiancée of Brandon's mother, but the evidence presented does not indicate whether she intended to assume the status as Brandon's mother nor if she provided support and maintenance to Brandon. Accordingly, Defendant is not

afforded this constitutional protection and the doctrine of corporal punishment is inapplicable here.

Assuming *arguendo* that Defendant was acting in *loco parentis*, Defendant's argument still fails. Defendant urges this Court to grant a new trial based on the trial court's failure to instruct on a parent's right to administer corporal punishment. In doing so, Defendant analogizes her case to *Varner*, where this Court reversed the defendant's conviction and remanded the case to the trial court, based on the trial court's failure to fully instruct the jury on corporal punishment. *Varner*, at 230, 796 S.E.2d at 837. In *Varner*, the trial court instructed the jury that it could find the defendant guilty if it determined that the type of discipline was not "moderate", but it failed to explain that "moderate" meant "any punishment that did not produce a 'lasting' injury. *Id.* Thus, the jury was required to use their own "reason and common sense" when interpreting the term. *Id.* The court in *Varner* also explained that there was insufficient evidence from which a jury could have concluded that the defendant's form of punishment was "calculated to cause permanent injury." *Id.* However, the Court further stated there was sufficient evidence from which a jury may have found that the defendant acted with malice. *Id.* ("Defendant cursed and yelled at his son prior to administering the paddling . . . which is *some* evidence of malice . . . [however] a jury could [also] reasonably find . . . [d]efendant administered the paddling without malice"). Thus, the Court, based on a preserved objection, granted the defendant a new trial because the trial court did not adequately instruct the jury. Significantly,

the Court noted that the State could have, but failed to, request an instruction on malice; if so, the jury could have convicted the defendant based on malice "irrespective of the extent of the physical injuries." *Id.* at 230-31, 796 S.E.2d at 837.

In the present case, we hold that a jury could reasonably infer that Defendant acted with malice; therefore, the absence of a jury instruction on corporal punishment did not prejudice Defendant. ("For plain error to be found, it must be probable, not just possible, that absent the instructional error the jury would have returned a different verdict." *Juarez*, 369 N.C. at 358, 794 S.E.2d at 300 (citation omitted)). The following evidence of malice was presented at trial: Defendant punished Brandon by forcing him to run in place for forty-five minutes, however, Brandon stated that it lasted from lunchtime to dinner time; Defendant extended the punishment if he cried; Defendant additionally disciplined Brandon by forcing him to run laps around the house, stand on one foot, throw items in a dumpster, including cinder blocks, walk nearly a mile to the bus stop, and threatened him with a "butt whooping." Brandon informed a nurse he had been hit with a belt, was occasionally locked in his room so he could not eat, and was instructed by his parents not to say he had been hit. He further shared during therapy that "bad things happen for bad behavior" and "if he [cried], he would get hit with a belt."

Thus, overwhelming evidence was presented at trial from which a jury could conclude that Defendant's disciplinary punishments were rooted in malice. Defendant made Brandon run in place for long periods of time, which occurred

approximately three to four times that week. The jury was shown photographs and video evidence of Brandon's injuries, which made it clear that this type of punishment was continuously used to the point where it became painful for Brandon to walk. The extended use of this punishment, along with the aforementioned forms of discipline, tends to demonstrate that Defendant acted "for the purpose of gratifying malice." *Demick*, 288 N.C. App. at 438, 886 S.E.2d at 619 (citation omitted). Accordingly, since "[o]verwhelming evidence of guilt can defeat a plain error claim on prejudice grounds[,]" we hold Defendant cannot show the required prejudice under this standard of review. *Id.* (cleaned up).

### III. Conclusion

Defendant was not entitled to a jury instruction on the lesser-included offense of misdemeanor child abuse because the evidence presented at trial satisfied all the elements of felony child abuse inflicting serious injury under N.C. Gen. Stat. § 14-318.4(a5). Additionally, the trial court did not err when it denied Defendant's motion to dismiss the charge of felony child abuse as the State presented substantial evidence as to each element of the offense. Lastly, the trial court did not plainly err by not providing the jury with an instruction on lawful corporal punishment. We hold Defendant received a fair trial free from error.

NO ERROR.

Judge HAMPSON concurs.

Judge MURPHY concurs in Part II-B and concurs in result only in Parts II-A

and II-C.